In re Donald TAFFI; Madelaine Taffi, Debtors.

Donald TAFFI; Madelaine Taffi, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

Nos. 94–55011, 94–55019.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 15, 1996.

Decided Sept. 17, 1996.

A. Lavar Taylor, Santa Ana, CA, for plaintiffs-appellants.

Gary R. Allen, Gary D. Gray, Paula K. Speck, United States Department of Justice, Washington, DC, for defendant-appellee.

Jan T. Chilton, Severson & Werson, San Francisco, CA, for amici American Automobile Manufacturers Association; Association of International Automobile Manufacturers, Inc.; and American Financial Services Association.

Norma L. Hammes, Gold & Hammes, San Jose, CA, for amicus National Association of Consumer Bankruptcy Attorneys, Inc.

Before: HUG, BEEZER, HALL, BRUNETTI, JOHN T. NOONAN, Jr., THOMPSON, LEAVY, TROTT, RYMER, T.G. NELSON and THOMAS, Circuit Judges.

NOONAN, Circuit Judge:

Donald and Madelaine Taffi appeal the judgment of the district court as to the value to be placed on a residence retained by them as debtors in a proceeding under Chapter 11 of the Bankruptcy Code. At issue is the proper construction in this context of 11 U.S.C. § 506(a). The district court valued the residence at its fair market value. We affirm the judgment of the district court, except that we reduce the amount of the government's tax lien to its allowed secured claim.

### FACTS

The Taffis owe the Internal Revenue Service (the IRS) $496,940 for tax liability that arose in 1980 and 1981. To secure payment of this claim, the IRS on October 12, 1989 attached a tax lien to the Taffis' personal residence (the House) and recorded it. The IRS also recorded a lien on the personal property of the Taffis in the amount of $10,-000. Senior liens in the amount of $233,-942.38 already encumbered the House.

The parties stipulated that the fair market value of the House was $300,000.00. That value represented what a willing and fully informed buyer would pay under fair market conditions. The parties also stipulated that the costs of selling the House in the marketplace would be nine percent, or $27,000.00. Taking into account the senior liens, the IRS would thus secure by the House $66,057.62, or, if hypothetical costs of sale were deducted, $39,057.62. The parties further stipulated that the House would sell for only $240,000.00 under forced sale conditions. That amount was the foreclosure value of the House. Under the forced sale scenario, the IRS would secure by the House only $6,057.62 after taking into account the senior liens, and nothing if costs of sale were deducted.

### PROCEEDINGS

On May 22, 1991 the Taffis sought relief under Chapter 11 and proposed a plan of reorganization (the Plan). On February 27, 1992 the court approved the Plan, by which, *inter alia*, the Taffis provided for the treatment of the tax liens of the IRS. No objection was made to the Plan, and the order confirming the Plan became final. There remained in dispute between the Taffis and the IRS the valuation of the IRS's interest in the House.

On August 17, 1992, the bankruptcy court entered judgment in this case. Guided by *In re Mitchell*, 954 F.2d 557 (9th Cir.), *cert. denied*, 506 U.S. 908, 113 S.Ct. 303, 121 L.Ed.2d 226 (1992), the bankruptcy court held that the foreclosure value was the proper value to be placed upon the property. The bankruptcy court reached its conclusion as a matter of stare decisis even though "the Mitchell court's interpretation appears faulty on the facts and in view of the plain language of 11 U.S.C. § 506(a)." The court concluded that the IRS had an allowed secured claim in an amount equal to the foreclosure value of the House plus the value of the personal property ($240,000 + $10,000 = $250,000), less the senior liens of $233,942.38, resulting in a total secured claim of $16,057.62. The IRS also had an allowed unsecured claim in the amount of $480,881.38. The court held that the tax lien was not void but that the unsecured portion of the IRS claim, under operation of the Plan, would be satisfied by payment of a fraction of the claim.

The United States appealed to the District Court for the Central District of California. The Taffis filed a cross-appeal. On October 6, 1993 the district court held in favor of the government: under Section 506(a) the House should be valued at the market value. The court also held that the valuation was not affected by the hypothetical cost of sale so that the sales cost should not be deducted from the value. The total secured claim of the IRS came to an amount equal to the market value of the House plus the value of the personal property ($300,000 + $10,000 = $310,000), less the senior liens of $233,942.38, resulting in a total secured claim of $76,-057.62. The court further held that the IRS could not be forced to release its lien as to

the unsecured portion and held that the tax liens "passed through the bankruptcy regardless of what the provisions of the plan purported to accomplish."

The Taffis appealed to this court. On October 10, 1995 a divided panel upheld the judgment of the district court, distinguishing *Mitchell* as a case involving the wholesale value and retail value of an automobile, not a house, and noting that "the terms 'wholesale' and 'retail' represent two different fair market values for an automobile", while the forced sale value of a residence "does not represent a fair market value at all." The court also agreed with the district court that the hypothetical cost of the sale should not be deducted from the fair market value. Finally, the government conceded that the Plan of reorganization "served to reduce the lien, and that the Plan was binding on the IRS." As the IRS had not objected to confirmation of the Plan, its lien had to be reduced to the amount of its secured claim.

This court then took the case en banc.

## ANALYSIS

A single question is presented to the en banc court: what is the appropriate method of valuation prescribed in a reorganization under Chapter 11 where collateral is retained by the debtors for the debtors' use? The Bankruptcy Code provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a).

The "property" of the estate of the debtor is the House. The "interest of the estate" is the ownership and possession of the House. The "interest of the creditor" is the tax lien on the House. According to the second sentence of section 506(a), that valuation is to be done variously depending on the context, in light of two factors, the purpose of the valuation and the use or disposition to be made of the interest.

When a Chapter 11 debtor or a Chapter 13 debtor intends to retain property subject to a lien, the purpose of a valuation under section 506(a) is not to determine the amount the creditor would receive if it hypothetically had to foreclose and sell the collateral. Neither the foreclosure value nor the costs of repossession are to be considered because no foreclosure is intended. Instead, when the proposed use of the property is continued retention by the debtor, the purpose of the valuation is to determine how much the creditor will receive for the debtor's continued possession. Hypothetical sales costs are not to be considered because no sale is intended.

In this case, the key fact is that the debtors are going to possess the House. This fact determines the disposition and use of the creditor's interest. The foreclosure value is not relevant because no foreclosure is intended by the Plan. The Taffis are in, not outside of, bankruptcy. The IRS is not foreclosing. Valuation must be accomplished within the actual situation presented. Consequently, the value has to be the fair market value of what the debtors are using.

The fair market value is not "replacement value" because the House is not being replaced. The fair market value is the price which a willing seller under no compulsion to sell and a willing buyer under no compulsion to buy would agree upon after the property has been exposed to the market for a reasonable time. The fair market value here has been determined by stipulation of the parties, approved by the bankruptcy court, to be $300,000.

There is nothing inequitable in this result. By agreeing to the Plan and allowing the Taffis to retain their residence, the IRS runs a risk. It is appropriate that it also benefit

from the higher valuation. *See In the Matter of Rash,* 90 F.3d 1036, 1066 (5th Cir.1996) (dissent).

We overrule *In re Mitchell,* 954 F.2d 557 (9th Cir.1992), to the extent that it held the valuation under section 506(a) should be based on determining "what the creditor would obtain if the creditor were to make a reasonable disposition of the collateral." *Id.* at 560. We make no judgment whether the fair market value of an automobile is high blue book or low blue book or some other value; that value is to be determined by the facts presented to the bankruptcy court.

Reaching this result, we put this circuit in harmony with all other circuits, except the Fifth, that have considered the question, *In re Trimble,* 50 F.3d 530, 531–2 (8th Cir.1995); *In re Winthrop Old Farm Nurseries, Inc.,* 50 F.3d 72, 75–76 (1st Cir.1995); *In re McClurkin,* 31 F.3d 401, 405 (6th Cir.1994); *In re Coker,* 973 F.2d 258, 260 (4th Cir.1992).

Accordingly, the judgment of the district court is AFFIRMED with the modification that the IRS's concession as to the reduction of the tax lien is to be incorporated into the judgment.