214 B.R. 1 (1997)
In re Richard L. MULVANIA, Debtor.
Richard L. MULVANIA, Appellant,
v.
UNITED STATES of America, INTERNAL REVENUE SERVICE, Appellee.
BAP No. CC-96-2127-SHJ, Bankruptcy No. SA 94-17472-LR.
United States Bankruptcy Appellate Panel of the Ninth Circuit.
Argued and Submitted July 23, 1997.
Decided September 22, 1997.
*2 Elmer Dean Martin, Diamond Bar, CA, for Appellant.
Richard G. Stack, Assistant United States Attorney, Los Angeles, CA, for Appellee.
Before SNYDER[1], HAGAN, and JONES, Bankruptcy Judges.

OPINION
SNYDER, Bankruptcy Judge.
Richard L. Mulvania (Debtor) appeals the bankruptcy court's determination that the claim of the Internal Revenue Service (IRS) was allowed as filed. We affirm in part, and reverse and remand in part.

I

FACTS
In 1985, the IRS sent a notice of income tax deficiency to the Debtor pursuant to 26 *3 U.S.C. § 6212. The notice claimed that the Debtor owed additional income taxes for tax years 1978, 1979, 1980, and 1981. In September 1985, the Debtor filed a petition challenging the claimed deficiency in the United States Tax Court.
The Debtor filed a voluntary Chapter 7 petition[2] on July 20, 1987. The Debtor was granted a discharge in his Chapter 7 case on December 21, 1987.
On May 3, 1989, stipulations between the Debtor and the IRS were entered with the tax court as to the amounts of the 1978, 1979, 1980 and 1981 taxes. The stipulations and decisions provided that the Debtor had tax deficiencies of $81,271 for 1978, $119,040 for 1979, $80,672 for 1980, and $10,878 for 1981. The stipulations also provided that the Debtor waived the restriction contained in 26 U.S.C. § 6213(a) that prohibits assessment and collection of a deficiency until a decision of a tax court has become final.
A stipulation and order for entry of tax court judgment between the Debtor and the IRS was entered in the bankruptcy court on March 10, 1989 (March 10, 1989 stipulation). In part, the March 10, 1989 stipulation requested an order allowing the tax court to enter its judgment as stipulated. In addition, paragraph 5(b) of the stipulation provided:
5. The parties request and stipulate to an order:
. . . .
(b) providing that the time within which the tax liability referred to in Paragraph 4 above may be assessed shall terminate 60 (sixty) days after the end of the period during which the United States is prohibited by reason of the Debtor's Title 11 case from making the assessment of the tax liability against the Debtor.
An order confirming and approving the March 10, 1989 stipulation was entered by the bankruptcy court on April 5, 1989.
The IRS allegedly assessed the taxes for the Debtor's 1978 tax year on May 14, 1989, 1979 tax year on August 14, 1989, and 1980 and 1981 tax years on August 28, 1989. The IRS recorded tax liens for the 1978 through 1981 taxes on May 3, 1994.
On March 30, 1994, the Debtor filed a motion for interpretation of the March 10, 1989 stipulation. A hearing on the motion for interpretation was held on May 4, 1994. An order denying Debtor's motion without prejudice to any subsequent adversary proceeding was entered with the bankruptcy court on May 25, 1994.[3]
The Debtor filed a voluntary Chapter 11 petition on July 22, 1994. The IRS timely filed a proof of claim on August 5, 1994, setting forth an unsecured priority tax claim of $476.29 and a secured tax claim of $1,481,441.10. The secured portion of the claim was for unpaid income taxes for the calendar years 1978 through 1981, and 1987.
On November 14, 1994, the Debtor filed a motion for an order fixing and allowing the amount of the IRS's claim on the Debtor's property. A hearing was held on this motion on December 5, 1994. On February 28, 1995, an order was entered establishing that the maximum amount of the IRS's secured claim was $511,718.42, less income taxes payable by the Debtor's estate due to the receipt of certain accounts receivable. The order made no ruling as to the validity of the IRS's claim, but reserved the right of the Debtor to file an objection to the claim within 30 days of the effective date of the Debtor's plan of reorganization.
The Debtor's first amended Chapter 11 plan of reorganization was confirmed by an order signed on February 27, 1995.
The Debtor filed an objection to the IRS's claim on March 30, 1995. A hearing was held on the Debtor's objection to claim on June 12, 1995. The bankruptcy court entered findings of fact and conclusions of law on December 12, 1996, overruling the Debtor's objection to the IRS's claim for failure to meet his evidentiary burden under Fed. R. Bankr.P. 3001(f). The IRS's claim, as filed, *4 was allowed by order entered December 12, 1996. The bankruptcy court also rendered alternative findings of fact and conclusions of law in the event that a reviewing court disagreed. In its alternative findings of fact and conclusions of law, the bankruptcy court determined that the parties were mutually mistaken as to the termination of the automatic stay, rendering paragraph 5(b) of the March 10, 1989 stipulation unenforceable. The bankruptcy court further found that hypothetical sales costs could not be taken into account in establishing the value of a secured claim under 11 U.S.C. § 506 and that the Debtor had no standing to exercise a trustee's avoiding powers under 11 U.S.C. § 545(2). The Debtor appeals.

II

Issues[4]
1. Did the bankruptcy court err in allowing the IRS's claim as filed?
2. Did the bankruptcy court err in its application of the burden of proof in claim objection proceedings?
3. Did the bankruptcy court err in denying the Debtor an opportunity to conduct further discovery?
4. Did the bankruptcy court err in finding that paragraph 5(b) of the March 10, 1989 stipulation was unenforceable on the basis of mutual mistake?
5. Did the bankruptcy court err in finding that the IRS's claim should not be reduced by the amount of hypothetical sales costs?

III

STANDARD OF REVIEW
A court's findings of fact are reviewed under the clearly erroneous standard and its conclusions of law are subject to de novo review. In re Park-Helena Corp., 63 F.3d 877, 880 (9th Cir.1995) (citing In re United States Trustee, 32 F.3d 1370, 1372 (9th Cir.1994)), cert. denied, ___ U.S. ___, 116 S.Ct. 712, 133 L.Ed.2d 667 (1996). Review under the clearly erroneous standard is "significantly deferential, requiring a `definite and firm conviction that a mistake has been committed.'" Granite State Ins. Co. v. Smart Modular Technologies, Inc., 76 F.3d 1023, 1028 (9th Cir.1996) (quoting Concrete Pipe & Products of Cal., Inc. v. Construction Laborers Pension Trust for Southern Cal., 508 U.S. 602, 623, 113 S.Ct. 2264, 2280, 124 L.Ed.2d 539 (1993)).

IV

DISCUSSION

A. The Bankruptcy Court Erred in Allowing the IRS's Claim as Filed
On August 5, 1994, the IRS filed an unsecured priority claim of $476.29 and a secured claim of $1,481,441.10. The bankruptcy court ruled that the IRS's claim was allowed as filed. The Debtor alleges that the claim should have been allowed as modified by either confirmation of the Debtor's Chapter 11 plan of reorganization or the bankruptcy court's prior valuation order.
On November 14, 1994, the Debtor filed a motion for order fixing and allowing claim secured by the Debtor's property. A hearing was held on the Debtor's motion on December 5, 1994. An order confirming the Debtor's first amended Chapter 11 plan of reorganization was filed on February 27, 1995. On February 28, 1995, an order was entered establishing that the maximum *5 amount of the IRS's secured claim was $511,718.42, less income taxes payable by the Debtor's estate by reason of the receipt of accounts receivable. The order directed the IRS to file amendments to the notices of lien it had recorded as public record to reflect the reduction of its secured claim to $511,718.42, less the income taxes.[5]
Both parties were under the impression that the February 28, 1995 order established the maximum amount of the IRS's secured claim. In the pleadings submitted in response to the Debtor's objection to claim, the IRS stated that its claim should be determined and allowed as follows:
Priority Claim: $476.29
Secured Claim: $511,718.42, less income taxes payable by the debtor's estate by reason of income from sale of accounts receivable.
General Unsecured Claim: $970,198.97, plus an amount equal to the income taxes payable by the debtor's estate by reason of income from sale of accounts receivable.
Further, presumably in accordance with the February 28, 1995 order, the IRS prepared amended notices of federal tax lien on September 13, 1995. Except that the dates and recorder numbers are different in two of the notices, they each contain the following language:
Based on the Bankruptcy Court Order entered February 28, 1995 in Case Number SA94-17472LR, the aggregate amount of this Notice of Federal tax lien and Notices of Federal Tax Lien, with Recorder Numbers XXXXXXXXX and XXXXXXXXX, recorded May 3, 1994, is reduced and restricted to $403,245.42.
Despite the clear language of the February 28, 1995 order, the bankruptcy court ruled that the IRS's claim was allowed as filed. The only mention of the February 28, 1995 order in the bankruptcy court's findings of fact and conclusions of law was a statement in the "FACTS" section that, "[c]ontemporaneous with his plan confirmation hearing, debtor brought a motion to value the IRS's claim." The bankruptcy court failed to either acknowledge or state its basis for disregarding the February 28, 1995 order. Although the Bankruptcy Code and Rules contain avenues for reconsideration or relief from prior orders, it does not appear as if the bankruptcy court was making use of these avenues in rendering its decision. See e.g., Fed. R. Bankr.P. 9024. As discussed in greater detail in Section D below, bankruptcy courts no longer possess an inherent ability to reconsider prior orders. Gekas v. Pipin (In re Met-L-Wood Corp.), 861 F.2d 1012, 1018 (7th Cir.1988). Whether intentional or not, it was error for the bankruptcy court to disregard or fail to consider its prior order. The bankruptcy court's decision overruling the Debtor's objection to the IRS's claim as filed is reversed and remanded with instructions that the bankruptcy court is to take into consideration its February 28, 1995 order in establishing the IRS's claim.[6]

B. The Bankruptcy Court Applied the Proper Burdens of Proof
The Debtor alleges that the bankruptcy court improperly imposed the burden of persuasion on him in objecting to the IRS's claim. A taxing authority has the ultimate burden of proving its claim in a bankruptcy proceeding. In re MacFarlane, 83 F.3d 1041, 1045 (9th Cir.1996), cert. denied, ___ U.S. ___, 117 S.Ct. 1243, 137 L.Ed.2d 326 (1997). This does not mean that a debtor is relieved of meeting his or her burden of proof. As correctly pointed out by the bankruptcy court, a properly filed claim constitutes prima facie evidence of the validity *6 and amount of the claim. Fed. R. Bankr.P. 3001(f). Once a claim has been properly filed, the debtor or trustee has the burden of presenting sufficient evidence to rebut this prima facie validity. MacFarlane, 83 F.3d at 1044. Only if that burden is met does the burden shift back to the creditor to prove its claim. MacFarlane, 83 F.3d at 1044.
Contrary to what is asserted by the Debtor, the bankruptcy court properly stated the law regarding the burden of proof in a claim's objection proceeding. The court in MacFarlane did not alter these burdens. The reason the issue arose in MacFarlane was that outside the bankruptcy context, the taxpayer rather than the taxing agency bears the ultimate burden of proof. Some courts were struggling with the idea of whether or not this concept should be imported into bankruptcy proceedings. MacFarlane, 83 F.3d at 1044. Adopting the rule that taxing authorities are to be treated the same as other claimants, the court in MacFarlane chose not to change the allocation of burdens in the bankruptcy context. MacFarlane, 83 F.3d at 1045. Therefore, the bankruptcy court did not improperly impose the burden of persuasion on the Debtor. The bankruptcy court instead determined that the Debtor failed to present sufficient evidence to rebut the presumption that the IRS's claim was prima facie valid. If the Debtor had met his burden, the burden would have shifted back such that the ultimate burden of persuasion would have rested with the IRS.

C. The Bankruptcy Court Erred in Denying the Debtor an Opportunity to Conduct Further Discovery
The Debtor alleges that he should have been afforded an opportunity to conduct discovery regarding whether the IRS sent him the notice of assessment as required by 26 U.S.C. § 6303. "`[A bankruptcy court] has wide latitude in controlling discovery, and its ruling will not be overturned in the absence of a clear abuse of discretion.'" United States on Behalf and for Use and Benefit of Army Athletic Assn. v. Reliance Ins. Co., 799 F.2d 1382, 1387 (9th Cir.1986) (quoting Foster v. Arcata Assocs., Inc., 772 F.2d 1453, 1467 (9th Cir.1985)).
The bankruptcy court determined that the Debtor's 1978 through 1981 taxes were validly assessed. The bankruptcy court based this determination on a finding that an IRS Form 4340 was filed with the court. The bankruptcy court, in its conclusions of law, stated that, "[t]he IRS Form 4340 filed with the court on June 1, 1995 conclusively establishes that notices of assessment for the 1978-1981 tax years were properly made."
Courts generally hold that "IRS Form 4340 provides at least presumptive evidence that a tax has been validly assessed under [26 U.S.C. §] 6203." Huff v. United States, 10 F.3d 1440, 1445 (9th Cir.1993). Although IRS Form 4340 is proper evidence, it is "not necessarily conclusive evidence." Farr v. United States, 990 F.2d 451, 453 (9th Cir.1993).
To demonstrate that the taxes at issue were validly assessed, the IRS submitted a document entitled "CERTIFICATE OF ASSESSMENTS AND PAYMENTS" (the Certificate). The bankruptcy court erred when it stated in its conclusions of law that the IRS filed Form 4340 with the court. Counsel for the IRS stated at the June 12, 1995 hearing, that although the material in the Certificate filed is the same as on Form 4340, the material is not on the preprinted form.
Not only did the IRS fail to submit an actual Form 4340, there is evidence that the Certificate submitted by the IRS is defective. Column "(g)" of Form 4340 should indicate what is known as the "23C Date."[7] Courts have indicated that a Form 4340 is not adequate to prove a valid assessment if it fails to list the 23C date. See Huff, 10 F.3d *7 at 1446 (holding that the IRS could not rely solely on a Form 4340 that did not list any 23C dates to prove that a tax was validly assessed); see also Brewer v. United States, 764 F.Supp. 309, 315 (S.D.N.Y.1991) (holding that the failure of a certificate of assessments and payments to contain 23C dates raises a factual question as to the validity of the liens at issue). The Certificate submitted by the IRS in the case before the Panel does not specifically list any 23C dates. The bankruptcy court did not have a sufficient basis for finding that the IRS issued valid IRS Form 23C assessment notices to the Debtor. The bankruptcy court erred in finding that the Certificate filed by the IRS was sufficient to prove the Debtor's taxes were validly assessed.[8]
The Debtor submitted a declaration stating that he did not receive the required notices. This declaration and the lack of evidence regarding the 23C dates, raise a factual question as to whether the taxes at issue were validly assessed.[9] Once this question was raised, it was an abuse of discretion for the bankruptcy court to deny the Debtor an opportunity to conduct further discovery. See Farr, 990 F.2d at 454 (holding that a taxpayer who submitted a declaration that she never received the required notices should have been given the opportunity to conduct further discovery before a judgment was entered against her).
The bankruptcy court indicated that the Debtor's failure to file an adversary proceeding or conduct discovery prior to the June 12, 1995 hearing, was detrimental to his case. However, "[i]f an objection to a claim is joined with a demand for relief of the kind specified in [Fed. R. Bankr.P.] 7001, it becomes an adversary proceeding." Fed. R. Bankr.P. 3007. An adversary proceeding is a proceeding "to determine the validity, priority, or extent of a lien." Fed. R. Bankr.P. 7001(2). The Debtor clearly specified in his memorandum in support of objection to the IRS claim, that he was seeking a determination of the validity of the IRS's lien. In his pleadings and at the June 12, 1995 hearing, the Debtor requested an opportunity to conduct additional discovery. The bankruptcy court stated in its findings of fact and conclusions of law that the Debtor
did not request that this hearing be treated as a status conference, nor did the debtor attempt to prepare a joint status report as is normally required prior to a status conference. Thus, there was simply no basis for either this court or the IRS to discern that debtor was not requesting a hearing on the merits of his objection.
However, the fact that a party does not invoke procedures normally available in an adversary proceeding is not fatal. In re Mathiason, 16 F.3d 234, 238 (8th Cir.1994).
The Debtor should be allowed an opportunity to conduct reasonable discovery as to the issue of whether the taxes were validly assessed.
D. The Bankruptcy Court Erred in Finding that Paragraph 5(b) of the March 10, 1989 Stipulation was Unenforceable on the Basis of Mutual Mistake
The Debtor argues that the bankruptcy court should not have relieved the IRS from the consequences of the March 10, *8 1989 stipulation, that was approved by the bankruptcy court pursuant to the order entered on April 5, 1989. A lower court's ruling on a motion for relief from judgment is reviewed for abuse of discretion. Martinelli v. Valley Bank of Nev. (In re Martinelli), 96 B.R. 1011, 1012 (9th Cir. BAP 1988).
Paragraph 5(b) of the March 10, 1989 stipulation provides:
5. The parties request and stipulate to an order:
. . . .
(b) providing that the time within which the tax liability referred to in Paragraph 4 above may be assessed shall terminate 60 (sixty) days after the end of the period during which the United States is prohibited by reason of the Debtor's Title 11 case from making the assessment of the tax liability against the Debtor.
Since the Debtor was granted a discharge in his Chapter 7 on December 21, 1987, the automatic stay terminated on that date. 11 U.S.C. § 362(c)(2)(C). Under the literal terms of the March 10, 1989 stipulation, the IRS therefore had 60 days from December 21, 1987, to assess the taxes. The IRS did not assess these taxes until 1989. The bankruptcy court determined that the 60 day assessment period contained in the March 10, 1989 stipulation was unenforceable because the parties were mutually mistaken as to the termination of the automatic stay and that enforcement of the stipulation would constitute a substantial injustice against the IRS. The bankruptcy court then applied the limitations period set forth in the Internal Revenue Code to determine that the assessments were timely.[10]
Although unclear from the record, the bankruptcy court apparently relied on its inherent equitable powers to reform the stipulation and order approving the stipulation. In its pleadings, the IRS cited numerous cases for the proposition that a court can use its powers as a court of equity to reform an agreement on the basis of a mutual mistake of the parties. However, these cases are not analogous to the case before this court for they do not involve a stipulation that was approved by court order.[11] Contrary to what is asserted by the IRS, relief from a bankruptcy court order is governed by Fed. R.Civ.P. 60, which is made applicable to cases under the Bankruptcy Code pursuant to Fed. R. Bankr.P. 9024.
Although this issue has not yet been addressed in the Ninth Circuit, the issue of whether bankruptcy courts continue to have an inherent ability to reconsider their orders has been addressed by the Seventh Circuit. Met-L-Wood Corp., 861 F.2d at 1018. The Seventh Circuit found that the bankruptcy court's inherent power to reconsider orders had been merged into the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure. Met-L-Wood Corp., 861 F.2d at 1018. In Met-L-Wood Corp., the Seventh Circuit stated:
[L]et us now consider whether [the trustee's] motion under [Fed.R.Civ.P.] 60(b) to revoke the bankruptcy judge's approval of the sale was properly denied. There is a preliminary question. Long before there was a Rule 60(b), bankruptcy courts exercised what they conceived to be, and what in fact has traditionally been regarded as, an inherent judicial power to reconsider their judgments within a reasonable time, including judgments confirming sales. See 4B Collier on Bankruptcy ¶ 70.98[17], at pp. 1183-94 (14th ed.1978). Now that there is a Rule 60(b), expressly applicable to bankruptcy as we have seen, the inherent power seems otiose; and although the cases continue to refer to it, they define it in terms of Rule 60(b). See, e.g., In re Chung King, Inc., 753 F.2d 547, 549-50 *9 (7th Cir.1985). As a natural development from those cases, as well from the text of Bankruptcy Rule 9024, which applies Rule 60(b) to bankruptcy proceedings, we hold that confirmed sales  which are final judicial orders  can be set aside only under Rule 60(b). We conclude that the old inherent power to reconsider bankruptcy orders has been merged into the rule.
Met-L-Wood Corp., 861 F.2d at 1018. According to the Seventh Circuit, a bankruptcy court no longer has an inherent power to reconsider its prior orders, rather its power to reconsider is governed by Fed. R. Bankr.P. 9024 applying Fed.R.Civ.P. 60.
Neither party has cited a Ninth Circuit decision to suggest a result contrary to that reached by the Seventh Circuit. The Ninth Circuit cautions against creating unnecessary intercircuit conflicts. In re Taffi, 68 F.3d 306, 308 (9th Cir.1995), reh'g en banc, 96 F.3d 1190 (1996), cert. denied, ___ U.S. ___, 117 S.Ct. 2478, 138 L.Ed.2d 987 (1997). This is especially true when a lower federal court is addressing an issue already decided by another circuit court. See United States v. Battley (In re Berg), 188 B.R. 615, 620 (9th Cir. BAP 1995) (holding that a lower federal court should not deviate from an interpretation made by another circuit absent compelling circumstances), aff'd, 121 F.3d 535 (9th Cir.1997). It was an abuse of discretion for the bankruptcy court to reform the March 10, 1989 stipulation based on an inherent equitable power. Whether relief from this order is warranted is governed by Fed. R.Civ.P. 60.
The IRS argues in the alternative, that the March 10, 1989 stipulation, if enforceable, did not waive the limitation period of 26 U.S.C. 6503(a)(1). The bankruptcy court in finding the March 10, 1989 stipulation unenforceable did not consider this argument.
The bankruptcy court's decision that paragraph 5(b) of the March 10, 1989 stipulation was unenforceable is reversed and remanded with instructions that the bankruptcy court is to analyze this issue under Fed. R.Civ.P. 60.[12]
E. The Bankruptcy Court Properly Found that the Secured Claim of the IRS Should Not Be Reduced by the Amount of Hypothetical Sales Costs
Both parties admit that this issue has been resolved by the Ninth Circuit. In re Taffi, 96 F.3d 1190, 1192 (9th Cir.1996) (holding that hypothetical sales costs are not to be taken into account in establishing the value of a secured claim under 11 U.S.C. § 506(a)), cert. denied, ___ U.S. ___, 117 S.Ct. 2478, 138 L.Ed.2d 987 (1997). The Debtor requested that the Panel reserve this issue pending a decision from the U.S. Supreme Court in In re Rash, 90 F.3d 1036 (5th Cir.1996), rev'd, ___ U.S. ___, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). The IRS stated in its opening brief that it would not object to such a procedure.
The U.S. Supreme Court rendered its decision in Rash on June 16, 1997. Citing with approval the Ninth Circuit's decision in Taffi, the U.S. Supreme Court determined that the proper standard for valuing a secured claim under 11 U.S.C. § 506(a) is the replacement rather than the foreclosure-value standard. Associates Commercial Corp. v. Rash, ___ U.S. ___, ___, 117 S.Ct. 1879, 1882, 138 L.Ed.2d 148 (1997). The Debtor has submitted a supplemental brief alleging that the U.S. Supreme Court's statements in footnote 6 of that opinion warrant a reversal of the bankruptcy court. Contrary to what is argued by the Debtor, this language does not require a court to deduct costs of sale when determining the replacement value of a secured claim. The U.S. Supreme Court states in Rash that "[o]ur recognition that the replacement-value standard, not the foreclosure-value standard, governs in cram down cases leaves to bankruptcy courts, as triers *10 of fact, identification of the best way of ascertaining replacement value on the basis of the evidence presented." Rash, ___ U.S. at ___ n. 6, 117 S.Ct. at 1886 n. 6. The Ninth Circuit has already ruled that the best way to determine replacement value[13] is to not take into consideration sales costs. Taffi, 96 F.3d at 1192. Rash does not require a different result. Thus, the bankruptcy court's determination that the IRS's secured claim should not be reduced by the amount of hypothetical sales costs is affirmed.

V

CONCLUSION
1. The bankruptcy court's determination that the claim of the IRS should not be reduced by the value of the Debtor's automobiles or the amount of hypothetical sales costs is affirmed.
2. The bankruptcy court's decision as to the application of the burden of proof in the claims objection proceeding and as to the finality of the tax court decision is affirmed.
3. The bankruptcy court's decision overruling the Debtor's objection to the IRS's claim as filed is reversed and remanded with instruction that the bankruptcy court is to take into consideration the February 28, 1995 order.
4. The bankruptcy court's decision that paragraph 5(b) of the March 10, 1989 stipulation was unenforceable is reversed and remanded with instructions that the bankruptcy court is to analyze this issue under Fed. R.Civ.P. 60.
5. The Debtor is to be allowed an opportunity to conduct reasonable discovery as to the issue of whether the taxes were validly assessed.
NOTES
[1] Honorable Paul B. SNYDER, Bankruptcy Judge for the Western District of Washington, sitting by designation.
[2] Unless otherwise indicated, all references to "chapter" or "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330.
[3] The excerpt of record before the Bankruptcy Appellate Panel does not contain a signed copy of this order.
[4] The Debtor raised the issues of whether or not the claim of the IRS should be reduced by the value of the Debtor's automobiles due to the Debtor's alleged bona fide purchaser status and whether or not a tax court decision becomes final immediately upon entry where a party waives his right to appeal. However, both parties admit in their briefs that these same issues have already been decided by either the Ninth Circuit or the Bankruptcy Appellate Panel for the Ninth Circuit. See United States v. Battley (In re Berg), 188 B.R. 615, 620-21 (9th Cir. BAP 1995) (holding that a trustee, and likewise a debtor in possession, does not have the authority to avoid federal tax liens as a bona fide purchaser under 11 U.S.C. § 545(2)), aff'd, 121 F.3d 535 (9th Cir.1997); see also Cole v. United States, 863 F.2d 34, 35-36 (9th Cir.1988) (holding that a tax court decision becomes final 90 days after entry even when a taxpayer expressly waives his or her right to appeal). Accordingly, the bankruptcy court's decision on these two issues is affirmed.
[5] It is unclear from the record of appeal whether the order confirming the Debtor's first amended plan of reorganization was in conflict with the February 28, 1995 order fixing the IRS's claim. For purposes of this appeal, it is assumed that the February 28, 1995 order disposed of the valuation issue.
[6] The Debtor requests the Panel take judicial notice of the September 13, 1995 notices of federal tax lien. An appellate court is empowered to take judicial notice of facts "capable of accurate and ready determination by resort[ing] to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b)(2). As this matter is being remanded, it is not necessary for the Panel to determine whether the amount of the IRS's secured claim is limited to $511,718.42, $403,245.42, or a different number.
[7] "In practice, the IRS makes assessments by having an assessment officer fill out and sign a `summary record of assessment,' also known as a Form 23C." Geiselman v. United States, 961 F.2d 1, 5 (1st Cir.1992). "The 23C date on a Form 4340 indicates the date on which the Form 23C was signed, the date of the assessment, and provides evidence that the tax was actually assessed by completing the Form 23C. Without a 23C date, the Form 4340 gives no indication as to whether the tax was actually assessed." Huff, 10 F.3d at 1446 n. 5.
[8] In rendering this decision we are distinguishing between the validity of the IRS's proof of claim and the validity of the assessments. We acknowledge that it is not necessary for the IRS to file a Form 4340 to take advantage of the principle that a properly filed proof of claim is prima facie evidence of the claim's validity. Fed. R. Bankr.P. 3001(f); In re Los Angeles Int'l Airport Hotel Assocs., 196 B.R. 134, 139 (9th Cir. BAP 1996) (failure to attach documentation to support a claim based on statute rather than based on writing, does not deprive the claim of prima facie validity), aff'd, 106 F.3d 1479 (9th Cir.1997); In re Pan, 209 B.R. 152, 156-57 (D.Mass.1997) (a properly filed proof of claim constitutes prima facie evidence of the government's claim even though no documentary evidence of the claim is provided).
[9] The Debtor, in his opening brief, submits a series of documents suggesting that IRS assessment officers have erroneously failed to sign Form 23C as required in several instances. The Debtor suggests that this evidence raises an inference that Form 23C was not signed for the taxes at issue in this case. As this evidence is inadmissible hearsay, we have not considered it in rendering our decision. Fed.R.Evid. 802. However, the issue of whether or not such evidence might be admissible in other circumstances is left to the discretion of the bankruptcy court on remand.
[10] Under 26 U.S.C. § 6501(a), the limitations period for making an assessment is three years from the date a tax return is filed. This limitations period is suspended during the time a tax court case is pending and for 60 days after the tax court decision becomes final. 26 U.S.C. § 6503(a)(1). The bankruptcy court indicated a tax court decision that is not appealed is final 90 days after entry of the decision.
[11] The only case cited by the IRS that did involve a court order was Mazzone v. Stamler, 157 F.R.D. 212 (S.D.N.Y.1994). Consistent with this opinion, the court in Mazzone analyzed whether relief was warranted under Fed.R.Civ.P. 60. Mazzone, 157 F.R.D. at 214.
[12] The IRS also argues that the bankruptcy court's decision to not enforce paragraph 5(b) is consistent with the principle that a government employee cannot waive or shorten a statute of limitations. Although this issue should be decided by the bankruptcy court on remand, it is noted that when a similar argument was raised in Swift & Co. v. United States, 276 U.S. 311, 48 S.Ct. 311, 72 L.Ed. 587 (1928), the U.S. Supreme Court stated that the "authority to make determinations includes the power to make erroneous decisions as well as correct ones." Swift & Co., 276 U.S. at 331-32, 48 S.Ct. at 317.
[13] Although the Ninth Circuit uses the phrase fair market value rather than replacement value, the U.S. Supreme Court in Rash made it clear that its use of the term replacement value is consistent with the Ninth Circuit's understanding of fair market value. Rash, ___ U.S. at ___ n. 2, 117 S.Ct. at 1884 n. 2.