**In re Norman T. NAGEL, Debtor.**

**Paul and Nancy Nicholson, Appellants,**

v.

**Norman T. Nagel, Appellee.**

**No. Civ. 98–1088 PHX HRH.**

United States District Court;
D. Arizona.

June 7, 1999.

Janice Sloan Feinberg Massey, Murphy & Posner, Phoenix, AZ, for appellants.

Adam Bennett Nach, Lane & Nach, PC, Phoenix, AZ, for debtor.

### DECISION ON APPEAL FROM BANKRUPTCY COURT

HOLLAND, District Judge.

The court has now before it the merits of the above entitled appeal.[1] The Bankruptcy Court for the District of Arizona ordered that a dismissed bankruptcy case be retroactively reinstated. This had the effect of retroactively reinstating the automatic stay under 11 U.S.C. § 362 and voiding an otherwise valid sale of certain real property. The issues raised have been

---

1. Appellants' opening brief, Clerk's Docket No. 12; Appellee's response brief, Clerk's Docket No. 14; reply brief, Clerk's Docket No. 17. An *amicus* brief was filed by the Arizona Trustee Association, Clerk's Docket No. 21; Appellee's response at Clerk's Docket No. 22.

briefed and oral argument has been heard. For the reasons which follow, the bankruptcy court is reversed.

### STANDARDS OF REVIEW

 A bankruptcy court's conclusions of law are reviewed *de novo*, and its findings of fact are reviewed under the clearly erroneous standard. *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir.1986); *In re Noblit*, 166 B.R. 906 (D.Ariz.1994). The bankruptcy court's denial of the appellants' motion for a rehearing or new trial[2] is reviewed for abuse of discretion. *Browning–Ferris Industries v. Kelco Disposal*, 492 U.S. 257, 278–280, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989).

### FACTS

The Nicholsons bring this appeal against appellee Norman Nagel. The history of this case is well set out by the parties. Nagel was a debtor who failed to make payments on certain real property. That property was subject to a deed of trust in favor of ArMA Membership Benefits, Inc., IRA Custodian FBO Max L. Wertz, M.D. IRA Rollover ("Wertz"). Wertz, through its agent Security Title Agency ("Security Title"), initiated a non-judicial trustee's foreclosure of the property. Security Title noticed the foreclosure sale for October 15, 1997. On October 14, 1997, Nagel filed a voluntary petition under Chapter 11 of the Bankruptcy Code, resulting in a postponement of the trustee's sale.

In bankruptcy court, Nagel failed to file some of the required documents in a timely fashion. Consequently, his case was dismissed on November 5, 1997. He filed a request for reinstatement of his bankruptcy on November 12, 1997. This request was denied on November 13, 1997, because Nagel had still not filed the requisite documents.

On December 2, 1997, in accordance with the announced postponement of sale, the trustee's sale was conducted, foreclosing Nagel's interest in the real property.[3] Wertz was the successful bidder at the sale. On December 16, 1997, Nagel filed the documents he previously had failed to file with the bankruptcy court together with his second motion to reinstate his bankruptcy petition. These documents were mailed to the bankruptcy court, but no one else.

Nagel's second motion to reinstate requested that the court: "keep this Bankruptcy in tact [sic] without lapse or convert the Bankruptcy petition to a Chapter 13 effective October 14, 1997." A hearing on the motion to reinstate was noticed to the United States Trustee's Office and was initially held on January 20, 1998, with Nagel appearing on his own behalf. The bankruptcy court continued the hearing until February 3, 1998, with the direction that the debtor and counsel for the United States Trustee appear. At the February 3, 1998, hearing, the debtor (through counsel) requested that the case be reinstated retroactive to October 14, 1997. The court so ordered, and the minute entry from the hearing reflected that the case was reinstated retroactive to October 14, 1997.[4]

2. Filed pursuant to Bankruptcy Rule 9023 and Rule 59, Federal Rules of Civil Procedure.

3. The court understands that the sale was conducted according to Ariz.Rev.Stat. § 33–810(B), which provides in pertinent part:
 The person conducting the sale may, for any cause deemed in the interest of the beneficiary or trustor, or both, postpone or continue the sale from time to time, or change the place of the sale to any other location authorized pursuant to this chapter by giving notice of the new date, time and place by public declaration at the time and place last appointed for the sale. Any new sale date shall be a fixed date within ninety calendar days of the date of the declaration. No other notice of the postponed, continued or relocated sale is required except as provided in subsection C of this section.
 The exception has no application here.

4. The minute order did not reference the automatic stay's operation. It states in pertinent part: "IT IS FURTHER ORDERED GRANTING THE MOTION TO REINSTATE RETROACTIVE TO OCTOBER 14, 1997."

In the meantime, on or about January 26, 1998, Wertz sold the real property to the Nicholsons. Wertz executed a warranty deed to the Nicholsons. The Nicholsons, having no knowledge of Nagel's bankruptcy case, commenced a forcible detainer action to have Nagel removed from the real property. On February 19, 1998, at the time set for the forcible detainer hearing, the Nicholsons learned that Nagel was in bankruptcy. At that time, Nagel informed the Nicholsons that it was his position that the trustee's sale was invalid and that he still owned the property.

The Nicholsons contacted Security Title regarding these developments. Security Title informed them of its position that it had proceeded in accordance with state law and that the trustee's sale was valid.

The Nicholsons filed a motion for clarification of the court's minute entry of February 3, 1998. At that hearing, the court asked the Nicholsons if they were moving to vacate the order reinstating Nagel's bankruptcy petition. Counsel for the Nicholsons responded by saying "No, Your Honor." There followed a history of the case. Counsel for the Nicholsons informed the court that the Nicholsons needed an order which clearly stated whether the February 3, 1998, order that reinstated Nagel's bankruptcy case also reinstated the automatic stay, thereby nullifying the sale to the Nicholsons. The court made it clear that its previous order did reinstate the automatic stay. Ultimately an understanding was reached by the Nicholsons and Nagel (through their counsel, Ms. Massey and Mr. Nach) that they would lodge an order which was agreed to in form within ten days, or the court would issue its own order. The import of events of that hearing are in dispute, with Nagel contending that coupled with the stipulated order, the Nicholsons stipulated to reinstatement of the stay. The Nicholsons, however, contend that they made it

See Exhibit 8 to Appellants' Notice of Filing Copies of Record on Appeal, Clerk's Docket

clear at the hearing that the purpose of obtaining a clarified order was to provide them with a basis for pursuing their legal rights. Because the parties dispute the nature of the Nicholsons' position at the hearing and the subsequent stipulated order, a particularly pertinent section of the hearing is set forth in detail as follows:

*Ms. Massey:* Your Honor, it's my understanding that the notice of that Motion to Reinstate was not provided to the person who was conducting the trustee's sale nor to Security Title. So, nobody was here to hear that information and what the Court and all of the parties that participated originally stated during that discussion in order to know what the Court minute's entry meant.

I'm not trying to make this a burdensome process on Your Honor. I merely needed additional words in this order to say: As a result of the discussion, this is retroactively to October 15th, thus the trustee's sale is vacated.

That's all I was enquiring Your Honor. So that then my clients can go forward and take whatever course of action they need to take against the seller who sold them the property.

The problem is the order tries to tell them about Acosta [*see In re Acosta,* 181 B.R. 477 (Bankr.D.Ariz.1995)] and about what the affect was, and that's our position: That the trustee's sale, based on the information of Acosta and the information we got from Security Title, which was that it was invalid. And they were quite willing to accept that, Your Honor.

If we are going to state court, well, the state court is not going to have any knowledge and not going to be able to make a determination.

So, my intent was not to make this a burdensome process. I am merely requiring the Court to add a few words to

No. 3.

its minute entry order as to the affect that retroactively reinstating the case, the affect it would have on this trustee's sale.

> *Mr. Nach:* If that's all she is requesting as to the order, I will draft an order and state in that order that the trustee's sale is hereby vacated and it's considered void under in re Schwartz, without even considering in re Acosta.[5]

On April 8, 1998, the bankruptcy court signed the stipulated order which explained that the phrase "retroactive reinstatement" meant that the debtor's bankruptcy case was reinstated to October 14, 1997, as if the automatic stay had not been terminated, such that the trustee's sale held on December 2, 1997, was void.[6] The court further held that as a result of the sale being void, the Nicholsons took no interest in the real property pursuant to the warranty deed executed by Wertz in their favor.

On April 20, 1998, the Nicholsons filed a "Motion for Re–Hearing re: Amendment to Motion to Reconsider Order Dismissing Case and Notice of Filing" pursuant to Bankruptcy Rule 9023 and Rule 59, Federal Rules of Civil Procedure. In that motion, the Nicholsons asserted that a new hearing was required as a result of the fact that neither they, nor Wertz, nor any of Wertz' agents were provided with notice of the hearing on the second motion to reinstate. The Nicholsons contended that they were denied their due process rights to contest the taking of real property. On May 27, 1998, the bankruptcy court issued a minute order in which it denied the Rule 59 motion, stating that there were no proper grounds for reconsideration and that

the motion was untimely. The instant appeal followed.

## DISCUSSION

The appellant presents three issues for this court's review:

(1) whether the bankruptcy court erred in granting the debtor's second motion to reinstate the above-captioned bankruptcy case retroactive to October 14, 1997, when the case had been properly dismissed for failure to file required documents;

(2) whether the bankruptcy court erred in determining that the trustee's sale conducted on December 2, 1997, was void and that the Nicholsons took no interest in the property at issue pursuant to the warranty deed dated January 26, 1998, despite the fact that the Nicholsons were unaware of the second motion to reinstate; and

(3) whether the bankruptcy court erred in denying appellants' Rule 59 motion for rehearing on the debtor's second motion to reinstate.

The issues will be discussed in the order presented.

### Granting of Nagel's Second Motion to Reinstate

■ The Nicholsons posit that the bankruptcy court erred in retroactively reinstating Nagel's bankruptcy case when it granted his second motion to reinstate. The reinstatement of Nagel's petition must be viewed in light of the fact that the bankruptcy court intended that the automatic stay was also retroactive, as evidenced by its comments at the hearing on the Nicholsons' motion for clarification and the subsequent order related thereto.

---

5. Exhibit 17 at 7–8 to Appellants' Notice of Filing Copies of Record on Appeal, Clerk's Docket No. 3.

6. The order stated in pertinent part:
 IT IS HEREBY ORDERED that the reinstatement of this case as of October 14, 1997 reinstated the automatic stay as of such date and any acts or conduct taken

since October 14, 1997 were in violation of the automatic stay pursuant to 11 U.S.C. § 362(a) and are void, including but not limited to the Trustee Sale held on December 2, 1997.
See Exhibit 10 at 1–2, attached to Appellants' Notice of Filing Copies of Record on Appeal, Clerk's Docket No. 3.

The original stay only continued until the time Nagel's case was dismissed. Thus, as of November 5, 1997, there was no stay in place and there was no stay standing in the way of the trustee's sale of December 2, 1997. The question is, however, whether the reinstatement of Nagel's case—and more importantly the retroactivity of the attendant stay—was proper.[7] To answer this question, the court examines the purpose of an automatic stay and whether it is terminated upon dismissal of a bankruptcy petition.

■ The Bankruptcy Code provides for an automatic stay of proceedings until the earlier of the time the case is closed, dismissed, or discharge is granted or denied. 11 U.S.C. § 362(c)(2). The legislative intent was that the effect of a case dismissal was to "undo the bankruptcy case as far as practicable, and restore all property rights to the position in which they were found at the commencement of the case." *In re Weston*, 110 B.R. 452, 456 (E.D.Cal.1989), *citing* H.R.Rep. No. 95–595 (1977); S.Rep. No. 95–989 (1978), *reprinted in U.S.Code Cong. & Admin.News*, 5787, 5835, 6294; *In re de Jesus Saez*, 721 F.2d 848, 851 (1st Cir.1983).[8]

A review of the case law provided by the parties and the court's own research reveals no basis in law for the proposition that the automatic stay continues after dismissal of a case. A retroactive reinstatement of the automatic stay is not consonant with this conclusion. Indeed, the bankruptcy court's retroactive reinstatement of the "automatic stay" is squarely at odds with the plain reading of subsection 362(c)(2) and Congress' intent that the parties be returned to the *status quo ante*. By "undoing" the return to the *status quo ante* through the retroactive

application of the stay, the bankruptcy court engaged in a kind of judicial time travel that cannot be reconciled with the law. This was not a simple matter of a *nunc pro tunc* order accomplishing that which should have been done previously. Rather, the order of April 8, 1998, divested otherwise vested rights from parties previously properly restored to the *status quo ante* pursuant to subsection 362(c)(2). Specifically, the order voided the trustee's sale of the Wertz property to the Nicholsons. Because the April 8, 1998, order was inconsistent with the legal effect of dismissal of a bankruptcy case, the bankruptcy court erred in granting the debtor's second motion to reinstate the above-captioned bankruptcy case retroactive to October 14, 1997, the case having been properly dismissed for failure to file required documents.

*The Determination that the Trustee's Sale was Void and that the Nicholsons Took No Interest in the Property*

■ The bankruptcy court determined that because of the retroactive reinstatement of the automatic stay, the trustee's sale of December 2, 1997, was void and the Nicholsons took no interest in the Wertz property. This conclusion was reached on the faulty premise that the retroactive reinstatement of the automatic stay was correct; the conclusion was therefore error *per se*. The court's analysis could end here. There are, however, other issues which demand attention. They find their genesis in the implications of a lack of actual notice to Nagel of the postponed trustee's sale.

Nagel argues that the trustee's sale was voidable because, as a debtor whose bankruptcy case had been dismissed, he was

---

**7.** The court does not doubt that the bankruptcy court would have imposed a new, prospective stay if it determined to reinstate Nagel's petition.

**8.** The postponement of the October 15, 1997, trustee's sale was not violative of Section 362. The Ninth Circuit instructs that the purpose of the automatic stay is to give the debtor a

breathing spell from his creditors, to stop all collection efforts, harassment, foreclosure actions, and piecemeal diminution of the debtor's estate. *In re Roach*, 660 F.2d 1316, 1318–1319 (9th Cir.1981). "Postponement notices which specify a new sale date do not violate 11 U.S.C. § 362." *Id.*

entitled to actual notice of the sale. There is a conflict on this point of law within the District of Arizona. In *Acosta*, the bankruptcy court held:

> Due process requires actual notice be given to a debtor to a Trustee's Sale which is scheduled to occur after stay relief or the dismissal of a bankruptcy case. Actual notice then allows a party the opportunity to exercise their legal rights in regard to such a sale. Creditors should take stock of the totality of the circumstances, including the possibility that a case might be reinstated within a reasonable time after dismissal. This procedure also protects the creditor from possibly holding a sale in violation of the automatic stay when a case is reinstated and thereby adds fairness to the procedure.[9]

*In re Acosta*, 181 B.R. 477, 479 (Bankr. D.Ariz.1995).

*Acosta* was distinguished by the Ninth Circuit Bankruptcy Appellate Panel in *In re Anderson*, 195 B.R. 87, 90 (9th Cir. BAP 1996), on the grounds that, unlike *Acosta*, the sale took place on the originally noticed sale date, whereas in *Acosta* the sale was orally continued several times during the bankruptcy proceeding. Of less importance in *Anderson* was the fact that, unlike *Acosta*, the sale did not occur while a motion to reinstate was pending. *Id.*[10] The court in *Anderson* noted that *Acosta* is rooted in the principle that before property can be taken and sold by a creditor, due process requires "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Anderson*, 195 B.R. at 90, *citing Acosta*, 181 B.R. at 479, *citing Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–315, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The court in *Anderson* then expressly declined to address the due process issue because the sale in *Anderson* occurred on the originally scheduled date.

Of a contrary view, and also out of the District of Arizona, is the decision in *In re Stober*, 193 B.R. 5 (Bankr.D.Ariz.1996). There the bankruptcy judge respectfully disagreed with his colleague, holding:

> In essence, *Acosta* judicially amends the Arizona statute to provide *additional* noticing requirements applicable only to debtors who had previously filed a federal bankruptcy case. The *Acosta* opinion thus extends additional post-dismissal bankruptcy protections to former debtors, although the intent of 11 U.S.C. § 349 provides that the effect of a dismissal requires only a return to the *status quo* [*ante*]. *See generally*, 2 Collier on Bankruptcy, § 349.03 (15th ed.1995); *In re Lewis & Coulter, Inc.*, 159 B.R. 188 (Bankr.W.D.Pa.1993). This court does not feel compelled to follow *Acosta.*
>
> . . . .
>
> Here, the creditor has done nothing other than what was required by Arizona law. This court will not impose additional noticing requirements upon it, other than what is required by Arizona law. *Ariz.Rev.Stat.* §[§] 33–801 *et seq.* Indeed, the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure are silent on additional notice requirements. Thus, no bankruptcy remedy exists to the debtors. If the debtors can

---

9. *See also In re Patrick J. Duncan*, 211 B.R. 42, 43 (Bankr.Ariz.1997), where the court found "facts substantially analogous to those of *In re Acosta*"; and in *In re Tome*, 113 B.R. 626, 632–634 (Bankr.C.D.Cal.1990), the bankruptcy court held that notice beyond oral postponement of a sale is warranted when relief from a stay is granted. *Tome* was relied on in *Acosta*, although it is readily distinguished, because it: (1) involved relief from a stay rather than a dismissal, and (2) does not premise its conclusion on due process grounds; rather, it references the notice and hearing requirements of the Bankruptcy Code, apparently relying on the Supremacy Clause.

10. But the court in *Anderson* also noted that the court in *Acosta* did not believe that the pendency of a motion was determinative. *Id.*

prove that the creditor somehow failed to follow the noticing, publishing, posting and sale requirements of *Ariz.Rev. Stat.* §§ 33–801 *et seq.*, then the debtors may pursue an action for damages or mandatory injunction in the state courts. *In re Stober,* 193 B.R. at 10.

This court is persuaded by the reasoning of *Stober.* As discussed there and as discussed above, the legal intent and effect of a dismissal of a bankruptcy case is to return the parties to the *status quo ante.* Once so returned, the parties are rightly subject to Arizona deed of trust law which was suspended only when a valid stay was in place. *Acosta* not only "judicially amends the Arizona statute to provide *additional* noticing requirements applicable only to debtors who had previously filed a federal bankruptcy case", but it also judicially amends the Bankruptcy Code. That is to say, *Acosta* disregards the fundamental principle that dismissal returns the parties to the *status quo ante* and declares an exception to the code itself. The promulgation of federal bankruptcy law is properly within Congress' ken, not the court's.

■ As for the due process concerns of *Acosta,* once the initial notice of the trustee's sale was given in compliance with due process, Nagel was in a position to keep himself apprised of the status of that matter. True, Nagel was a *pro se* litigant when the postponement of sale and the sale occurred. As the court in *Stober* held, however, laymen who choose to represent themselves are held to the same standards as attorneys. *Id.* at 9. Recent Ninth Circuit authority does not require the court to go to extraordinary lengths to accommodate debtors because they are *pro se. In re Thomas,* 194 B.R. 641, 650 (Bankr.D.Ariz.1995), *citing In re Glass,* 60 F.3d 565, 570 (9th Cir.1995). Notably, it appears the debtors before the court in *Acosta,* 181 B.R. 477, were *pro se,* whereas those before it in *Duncan,* 211 B.R. 42, were represented by counsel. Thus the due process premise of these decisions did not hinge upon whether the debtors were represented by counsel or proceeding *pro se.* It is arguable that the so-called "judicial amendment" of *Acosta* to the Arizona statute and the Bankruptcy Code implicitly stands for the proposition that notice to a debtor through his attorney of a trustee's sale is inadequate if the sale is orally postponed, even though the applicable statute plainly provides for such a procedure. Due process does not require this sort of judicial shepherding of the litigants, and such shepherding would add another layer of procedure to an already complicated process.

Finally on this issue, the court takes note of the Arizona Trustee Association's *amicus curiae* argument that the due process requirements of the Fourteenth Amendment do not apply to a private deed of trust sale because such sales do not constitute state action. It is ironic that this argument was relegated to a lengthy footnote because—although it misses the pivotal Ninth Circuit case of *Charmicor v. Deaner,* 572 F.2d 694 (1978)—it is quite persuasive. The court is convinced that the *Acosta* court's reliance on *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314–315, 70 S.Ct. 652, 94 L.Ed. 865 (1950), for its Due Process Clause analysis was misplaced. In *Mullane,* New York banking law statutorily authorized a trust company, with approval of the state banking board, to establish a common fund and, within prescribed limits, invest therein the assets of an unlimited number of estates, trusts, or other funds of which it was trustee. *Id.* at 308–309. The Supreme Court held that the publication notice of judicial settlement of accounts required by New York banking law was incompatible with the requirements of the Fourteenth Amendment as a basis for adjudication depriving known persons whose whereabouts are also known of substantial property rights. *Id.* at 320. The trust in *Mullane* was a creature of a state regulatory scheme and existed "by the grace of its laws", and its treatment by the Su-

preme Court was therefore couched in terms of an entity that was essentially an extension of "a state's power". *Id.* at 313.

■ In this case, the Arizona statute that authorized the trustee's sale did not involve the requisite nexus between the state and the trustee so as to constitute state action. Rather, deeds of trust are essentially private contractual relationships which tie a given debt to a given parcel of property, and the remedy under them is private in nature. *Kenly v. Miracle Properties,* 412 F.Supp. 1072, 1075–1076 (D.Ariz.1976). The Ninth Circuit teaches that in the context of a non-judicial foreclosure, the degree of state action necessary to raise a colorable federal claim for due process purposes exists if the statute requires that action be taken, not by merely creating a right to act. *Charmicor v. Deaner,* 572 F.2d 694, 695–696 (9th Cir. 1978). Here the Arizona statute created a right to act, whereas in *Mullane* the New York banking laws required actions of the trust which did not comply with the Due Process Clause requirements of notice. *Mullane,* at 309, 70 S.Ct. 652. Furthermore, the fact that the right created by the statute did not exist at common law is not determinative. *Kenly,* 412 F.Supp. at 1075; *Charmicor,* 572 F.2d at 696. Thus, the bankruptcy court erred in determining that the trustee's sale was void and that the Nicholsons took no interest in the property at issue.

### *Denial of the Nicholsons' Motion for New Trial*

Whether the bankruptcy court erred in denying the Nicholsons' Rule 59 motion for rehearing on Nagel's second motion to reinstate is now a moot question. The retroactive reinstatement of the bankruptcy case and the subsequent order that the trustee's sale was void were so clearly erroneous that the Nicholsons have won the day.

■ The stipulated order presents a bothersome but inconsequential wrinkle in this case. Fairly read together, the statements made by the Nicholsons' counsel and the subsequent stipulated order issued upon the Nicholsons' motion for clarification demonstrate that the Nicholsons did not challenge the order retroactively reinstating the bankruptcy case. Rather, they sought its clarification, and their counsel's statements are readily understood to be representations that, upon receiving such clarification, they would pursue their rights against the seller in state court. What the Nicholsons would or would not do next was not the purpose of the motion or the stipulation. Quite simply, the Nicholsons got what they moved for: a clarification of the order retroactively granting the second motion to reinstate.[11] The inapt statements of Nicholsons' counsel in expressing their reasons for requesting the clarification do not detract from or add to this basic fact. Moreover, nothing about the record of the hearing or the stipulated order is fairly read as a concession by the Nicholsons that the order was legally correct or binding. Nagel's estoppel argument is without merit, and *In re Mulvania,* 214 B.R. 1 (9th Cir. BAP 1997), and Rule 9024, Federal Rules of Bankruptcy Procedure (applying Rule 60, Federal Rules of Civil Procedure) are inapposite. The bankruptcy court could have modified its order reinstating the case retroactively because the stipulation did not divest it of its inherent power to reconsider its prior orders. *See In re Mulvania,* 214 B.R. at 9.

■ Furthermore, the bankruptcy court erred *per se* in denying the motion for rehearing. It stated: "THE COURT HEREIN DETERMINES THAT THERE ARE NO PROPER GROUNDS FOR RECONSIDERATION AND FURTHER THAT THE MOTION IS UN-

---

**11.** The statements of the bankruptcy judge at the hearing on the motion for clarification were consistent with this. He made it clear that the minute order of February 3, 1998, had the intended effect of reinstating the bankruptcy case retroactively.

TIMELY AND THEREFORE DENIED."[12] As discussed above, there were proper undisputed grounds for the motion. It would have been impossible for the Nicholsons to have brought their Rule 59 motion (or its Bankruptcy Rule 9023 correlate) within the prescribed ten days. The order retroactively reinstating the bankruptcy case was issued February 3, 1998, and the Nicholsons did not even learn of the order until February 19, 1998. Nor had Wertz been given notice of the motion to reinstate the bankruptcy case. The Nicholsons were denied due process as required under the Fifth Amendment because no notice was given of the February 3, 1998, hearing and order which made the January 26, 1998, sale void. It is beyond cavil that notice is necessary to satisfy the Fifth Amendment's due process requirements. *Mullane*, 339 U.S. at 314, 70 S.Ct. 652.

The motion to reconsider the stipulated order of April 8, 1998, which was filed on April 20, 1998, was not exactly correct. At that time there was no "entry of judgment" as contemplated by Rule 59. Rather, there was an order as contemplated under Rule 60(b). Therefore, the motion to reconsider the order should have been brought under Rule 60(b)(4) or Bankruptcy Rule 9024 on the grounds that the "judgment" (order) was void because the hearing and order were inconsistent with due process of law. 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2862 (2d ed.1995). "If the notice requirement of the due process clause is not satisfied, the order is void." *In re Ex–Cel Concrete Co.*, 178 B.R. 198 (9th Cir. BAP 1995), *citing In re Center Wholesale*, 759 F.2d 1440, 1448 (9th Cir.1985). Under the circumstances of this case, it would elevate form over substance to hold a hyper-technical error in pleading against the Nichol-

sons. Again, the retroactive reinstatement of the bankruptcy case was erroneous.

### CONCLUSION

For the foregoing reasons it is hereby ordered that the bankruptcy court's order of April 8, 1998, is reversed. The case is remanded to the bankruptcy court for further proceedings consistent herewith.

Record on Appeal, Clerk's Docket No. 3.

---

12. Order (May 27, 1998), attached as Exhibit 13 to Appellants' Notice of Filing Copies of