**In re Timothy Glenn STOBER and Kari Jill Stober, Debtors.**

**No. 96–0545 PHX JMM.**

United States Bankruptcy Court,
D. Arizona.

March 13, 1996.

Timothy Stober, pro se.

Richard E. Chambliss, Newman, Ahern, Chambliss & Banen, P.C., Phoenix, AZ, for Chase Manhattan Mortgage.

**ORDER DISMISSING CASE**

JAMES M. MARLAR, Bankruptcy Judge.

The motion to dismiss for bad faith filing and for violation of 11 *U.S.C.* § 109(g), filed by Chase Manhattan Mortgage ("Chase"), came on regularly for hearing on March 1, 1996. Appearances were made by or on behalf of the movant, the debtors, and the chapter 13 trustee. The trustee joined in the motion, urging dismissal. At the conclusion of the hearing, the court took the matter under advisement in order to review the entire file in this and the debtors' previous cases and to consider the law as it relates to the issues in this case. The court now rules and dismisses this case.

## I. *FACTUAL FINDINGS.*

### A. *The Debtors' First Chapter 13 Case— No. 95-0995 PHX SSC.*

The debtors first filed for relief under Chapter 13 on February 6, 1995. The case file reveals that the debtors filed only a "bare" petition, attaching no plan, no schedules and no statement of affairs, as required by *Fed.R.Bankr.P.* 1007 and 1008 and 11 *U.S.C.* § 521, nor did they pay the $160 filing fee. On March 23, 1995, the court entered an order directing them to pay the filing fees. However, they never paid it.

During the brief life of the case, the debtors also made no payments to the Chapter 13 trustee. Only three claims were filed by creditors. The Internal Revenue Service filed a claim for $ 7,423.55, attributable to the 1992, 1993, and 1994 tax years, for which no returns had been filed by the debtors. The Arizona Department of Revenue filed a claim for $ 6,817.76 attributable to the 1990, 1991, 1992 and 1993 tax years. Chase filed a claim for $68,620.44, attributable to the mortgage on the debtors' residence. Chase alleged that 11 monthly payments were unpaid, together with fees and costs associated with foreclosure proceedings. The amount necessary to reinstate the default was $ 8,859.22. However, the filing of the claims was for naught, because on March 7, 1995, the case was dismissed for the debtors' failure to file a master mailing list. In turn, the first meeting of creditors, scheduled for March 23, 1995, was vacated.

### B. *Chase's Foreclosure.*

Following the dismissal of the debtors' case, Chase conducted a trustee's sale on June 14, 1995, and became the owner of the

residential property. (Dkt. 9, Ex. "C"). However, the debtors refused to vacate the property, requiring Chase to file for forcible entry and detainer in the state court on July 5, 1995. That action was stayed by the filing of the second bankruptcy case on July 12, 1995.

### C. *The Debtors' Second Chapter 13 Case—No. 95–6025 PHX SSC.*

On July 12, 1995, four months after their first case was dismissed, the debtors again filed Chapter 13 proceedings. Once more, they filed only a "bare" petition, and never filed schedules, statements of affairs, or a plan, and never paid the $160 filing fee. As in the first case, the court issued an order directing the debtors to pay the filing fee by August 26, 1995, but they did not comply. Although, on July 24, 1995, the debtors filed a master mailing list, they again failed to file a Chapter 13 plan, schedules, or a statement of affairs, as required by law. The list of creditors was sparse, listing only Chase, the Internal Revenue Service, and the Arizona Department of Revenue. A proof of claim was filed only by Chase. It listed 16 unpaid monthly installments, plus late charges and fees totalling $13,680.40, from April, 1994 through July, 1995.

On August 8, 1995, Chase sought relief from the automatic stay, so that it could conclude its forcible entry and detainer proceedings. On August 23, 1995, the debtors responded in opposition, stating only that they desired a hearing in order to "state their position." The next day, on August 24, 1995, the debtors failed to appear for their scheduled § 341 hearing. (Dkt. 13). The debtors also failed to commence making payments to the trustee. (Dkt. 17) Thus, on August 25, 1995, the second chapter 13 case was dismissed. (Dkt. 14). In turn, again, the preliminary hearing on Chase's stay relief motion was vacated.

### D. *The Debtors' Third Chapter 13 Case— No. 95–8963 PHX RGM.*

On October 4, 1995, the debtors again filed for Chapter 13 relief. The debtors were again ordered to pay their $160 filing fee by December 20, 1995, but once more they failed

to comply. On October 25, 1995, Chase again filed for stay relief, addressing the same points raised in the two previous cases. Again, the debtors opposed the relief. The court set a hearing for December 12, 1995. The parties, however, stipulated to continue that hearing to a time after January 7, 1996, and the continued hearing was ultimately set for February 6, 1996.

Chase also filed a motion to dismiss, alleging that the case had been filed in bad faith. The debtors filed an opposition thereto, which Chase moved to strike. The debtors also filed an additional pleading, wherein they asserted that the trustee's sale, which Chase had conducted between the first and second cases, had been conducted in "secret," and that they had not been given prior notice thereof. (Dkt. 22). On December 12, 1995, the court heard argument on Chase's motion to strike the debtors' response to the stay relief motion. The court denied the motion, and set the stay relief hearing for February 6, 1996. However, the stay relief hearing was ultimately vacated because the case was dismissed on December 26, 1995, for the debtors' failure to appear at the § 341 meeting and for failure to file required documents.

Notably, before the case was dismissed, the debtors were given six opportunities to appear at their § 341 hearing. The meeting was originally scheduled for November 16, 1995 (Dkt. 5). When the debtors failed to appear, it was continued to November 30, 1995 (Dkt. 17). When they failed to appear again, it was continued to December 7, 1995 (Dkt. 21). On December 7, 1995 the wife appeared and was examined, but the husband did not appear. The trustee continued the husband's portion of the § 341 meeting to December 14, 1995 (Dkt. 25). When the husband again failed to appear, the meeting was continued to December 21, 1995 (Dkt. 28). On that date, when the husband failed to appear again, the trustee finally recommended dismissal. (Dkt. 30).

With regard to the required documents, the file reflects that the debtors filed Schedules of Assets and Liabilities, and a monthly budget (Schedules A–J), but they did not file them until December 6, 1995, two months

after entry of the order for relief. As in the previous cases, the debtors filed neither a statement of affairs nor a Chapter 13 plan. Additionally, the debtors never made a single payment to the Chapter 13 Trustee. (Dkt. 33).

The debtors' third chapter 13 case was dismissed on December 26, 1995.

### E. *The Debtors' Fourth Chapter 13 Case—No. 96–0545 PHX JMM.*

On January 18, 1996, the debtors filed a fourth Chapter 13 proceeding. The § 341 meeting was set for February 29, 1996. On January 26, 1996, the debtors were ordered to pay their $160 filing fee by March 3, 1996, but once more, the debtors filed only a "bare" petition, with no schedules, plan or statement of affairs. By now the debtors had become astute enough to realize that they could avoid prompt dismissal by the filing of a master mailing list. However, this time their list contained the name of only a single creditor, Chase.

On February 6, 1996, Chase filed a motion to dismiss as a bad faith filing, and for a finding that the filing of the case was a violation of § 109(g). (Dkt. 6). Additionally, Chase filed another motion for stay relief. (Dkt. 7). The Chase motions, taken together, outlined the history of the cases and the applicable law on bad faith filings. The trustee joined in the motion to dismiss (Dkt. 12). On February 26, 1996, the debtors responded to the motion to dismiss, again asserting that the trustee's sale of their residence had been conducted in "secret," allegedly without notice to them. The debtors also maintained: (i) that they had filed all of the required documents in their Chapter 13 cases (even though such papers do not appear in any of the case files), (ii) that they had both appeared and been examined at the § 341 meetings held in conjunction with their prior cases (even though the files reflect repeated absences), and, finally, (iii) that they had no legal representation in any of their cases. Incredibly, despite these arguments, on February 29, 1996, the debtors again failed to appear and be examined at the fully noticed § 341 meeting. (Dkt. 15).

The Chase motion to dismiss was argued on March 1, 1996. At that time, the debtors argued that a recently-decided case, *In re Acosta,* 181 B.R. 477 (Bankr.Ariz.1995), applied to their situation. They also advised the court that they would be consulting an attorney "that afternoon." As of March 13, 1996, however, no attorney had appeared in the case on their behalf. In addition, the debtors made an allegation which they had never raised in any of their prior cases. They claimed that they had actually tendered payments to Chase, but that Chase had refused the payments. No evidence was produced to support this contention. At this hearing, the court advised the parties that it would not further delay ruling in the·case, but wished to review the case files in each of the cases. The court has now done so.

## II. *LEGAL DISCUSSION.*

### A. *General Deficiencies.*

█ Despite their protestations to the contrary, after a review of their four cases, the court is of the opinion that these debtors are manipulating and abusing the bankruptcy system, wasting court time, trustee time, and costing Chase lost income and accruing attorneys' fees, as well as depriving it of possession of property which it has owned for nine months. The facts of the four cases clearly support this conclusion. Such facts includes the following:

1. The debtors have not made a single payment to Chase, either on its debt, as rent, or as "adequate protection," for almost two years (April, 1994—February, 1996).

2. The debtors clearly had the ability to make their mortgage payments to Chase. According to Schedules I and J, filed in connection with their third case, the debtors have disposable income of·$861 per month, *after deducting their monthly mortgage payment of $659.* Because the debtors have not been making their monthly mortgage payment to Chase, they have actually had surplus income of $1,520 per month for the last two years. During· this same time period, Chase has not

been paid rent, adequate protection, nor any other compensation with respect to its claim.

3. The husband is gainfully employed as a credit manager at Wescor Graphics Corporation, and the wife is a legal transcriber with KJ's Legal. Thus, they obviously have more knowledge about the legal and credit systems than they would have the court believe.

4. Despite four court orders entered in each of their four cases, requiring the payment of a $160 filing fee in each case, the debtors have never paid a single filing fee. These facts are reflected in the following chart:

| Case No. | Order Date | Payment Required | Payment Due Date | When Did They Pay? | How Much Was Paid? |
|---|---|---|---|---|---|
| 95–0995 | Feb. 2, 1995 | $160 | Mar. 23, 1995 | Never | –0– |
| 95–6025 | July 13, 1995 | $160 | Aug. 26, 1995 | Never | –0– |
| 95–8963 | Nov. 9, 1995 | $160 | Dec. 20, 1995 | Never | –0– |
| 96–0545 | Jan. 26, 1996 | $160 | Mar. 3, 1996 | Never | –0– |

5. The debtors have never filed a Chapter 13 plan in any of their four cases, although the rules require it to be filed with the petition, or within 15 days thereafter. *Fed.R.Bankr.P.* 3015(b).

6. The debtors have not made a single payment to the Trustee, in any case, even though the law requires such payments must begin 15 days after commencement of the case, or with court approval, within 45 days of the filing date. 11 *U.S.C.* § 1326(a)(1); *Fed. R.Bankr.P.* 3015(b).

7. The husband never appeared at a § 341 hearing, although, in the four cases, he was given a cumulative total of eight opportunities to do so. The wife finally appeared only on the fifth occasion, which occurred late in the parties' third case. The first and second cases were dismissed partly due to this fact.

8. The debtors filed only bare petitions in three cases, and incomplete documents in the fourth.

B. *The Debtors' Alleged "Tender of Payments".*

On March 1, 1996, at the hearing on Chase's motion to dismiss, the debtors alleged that they had tendered payments to Chase, which Chase rejected. There is no previous reference to these allegations in any of the four cases, nor in any of the debtors' pleadings in opposition to Chase's four requests for stay relief and for dismissal. At the March 1, 1996 hearing, no physical evidence was produced; no affidavits were produced; testimony was not given; no pleadings were filed; and no specifics as to the dates, times or amounts of the alleged "tendered" payments were made. The court is without information to even speculate whether the alleged "tenders" were made before or after the trustee's sale on June 14, 1995. Consequently, having been given absolutely no information on this new issue, the debtors' contentions must be rejected.

C. *The Debtors' "Without Counsel" Argument.*

■ Laymen who insist on representing themselves are held to the same standards as attorneys. *United States v. Pinkey,* 548 F.2d 305, 311 (10th Cir.1977) (He who proceeds *pro se* with full knowledge and understanding of the risks does so with no greater rights than a litigant represented by a lawyer, and the trial court is under no obligation to become an "advocate" for or to assist and guide the pro se layman through the trial thicket); *see also Jacobsen v. Filler,* 790 F.2d 1362 (9th Cir.1986). Thus, the debtors' argument here is without merit.

D. *The Debtor's "Secret Sale" Argument.*

The debtors argue that the trustee's sale conducted by Chase on June 14, 1995, should

not be allowed to stand because it was allegedly conducted in "secret." The debtors filed their first Chapter 13 case on February 6, 1995, and it was quickly dismissed on March 7, 1995. Four months then passed before they filed their second case on July 12, 1995. In the intervening four month period, Chase completed a trustee's sale on the debtors' home, at which it purchased the property with a credit bid of $71,391.65, and recorded a trustee's deed on June 14, 1995 (Third Case, Ex. "C," Dkt. 7). Despite this, the debtors refused to vacate the premises, so Chase filed an action in the state court to forcibly evict them. The debtors have successfully delayed this effort through their second, third and fourth Chapter 13 filings. All the while the debtors have remained firmly entrenched in the home, not paying rent nor making their mortgage payments, violating court orders, and manipulating the bankruptcy system to their benefit.

In support of their pleas that Chase has somehow trampled on their rights, the debtors have cited *In re Acosta*, 181 B.R. 477 (Bankr.Ariz.1995). In that case, Judge Robert G. Mooreman held that, in spite of Arizona deed of trust law which allows continuances of published trustee's sale notices to be orally announced from time to time,[1] a debtor with a pending motion to reinstate a dismissed bankruptcy, or even a debtor whose case has simply been dismissed, is entitled to *actual notice* from the creditor before a foreclosure can occur. *Id.* at 479; *see also In re Tome*, 113 B.R. 626 (Bankr.C.D.Cal.1990). In essence, *Acosta* judicially amends the Arizona statute to provide *additional* noticing requirements applicable only to debtors who had previously filed a federal bankruptcy case. The *Acosta* opinion thus extends additional post-dismissal bankruptcy protections to former debtors, although the intent of 11 *U.S.C.* § 349 provides that the effect of a dismissal requires only a return to the *status quo*. *See generally*, 2 *Collier on Bankruptcy*, ¶ 349.03 (15th ed. 1995); *In re Lewis &*

*Coulter, Inc.*, 159 B.R. 188 (Bankr.W.D.Pa. 1993). This court does not feel compelled to follow *Acosta*. Although this court has great respect for the decisions of each of its colleagues, we will occasionally disagree and we are not bound to follow one another's published works.

Moreover, the Ninth Circuit has considered this same issue, in a slightly different context. *In re Roach*, 660 F.2d 1316 (9th Cir.1981). In *Roach*, a creditor had continued a noticed trustee's sale by publishing several successive notices of the sale. The debtor argued that the creditor's post-bankruptcy continuances had violated the automatic stay of 11 *U.S.C.* § 362. The Ninth Circuit disagreed, holding that no stay violation occurred, and that the creditor had "merely maintained the status quo, and did not harass, interfere or gain any advantage" by its practice of continuing the sales, post-petition.

Here, the creditor has done nothing other than what was required by Arizona law. This court will not impose additional noticing requirements upon it, other than what is required by Arizona law. *Ariz.Rev. Stat.* § 33–801 *et. seq.* Indeed, the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure are silent on additional notice requirements. Thus, no bankruptcy remedy exists to the debtors. If the debtors can prove that the creditor somehow failed to follow the noticing, publishing, posting and sale requirements of *Ariz.Rev.Stat.* §§ 33–801 *et seq.*, then the debtors may pursue an action for damages or mandatory injunction in the state courts. *See generally, Patton v. First Federal Savings & Loan Ass'n. of Phoenix*, 118 Ariz. 473, 578 P.2d 152 (1978) (foreclosure under trust deed requires strict compliance with statute). Continued bankruptcy stays against the creditor will not accomplish the intended result. Here again, no equities favor the debtors. Although they

---

1. *Ariz.Rev.Stat.* § 33–810(B) provides, in pertinent part, "The person conducting the sale may, for any cause deemed in the interest of the beneficiary or trustor, or both, postpone or continue the sale from time to time, or change the place of the sale to any other location authorized pursuant to this chapter by giving notice of the new date, time and place by public declaration at the time and place last appointed for the sale. Any new sale date shall be a fixed date within ninety calendar days of the date of the declaration. No other notice of the postponed, continued or relocated sale is required except as provided in subsection C of this section. [not applicable here]."

have lived payment-free for just under two years, the creditor is prevented by Arizona's anti-deficiency laws from pursuing any monetary deficiencies against them. *Ariz.Rev. Stat. § 33–814(G)*. Thus, when Chase finally evicts them and recovers physical control of the real property, the debtors will have no further liability on the debt, or for rental of the property during their post-foreclosure occupancy.

E. *The Creditor's "Bad Faith Filing" Argument.*

 The Ninth Circuit has counseled the bankruptcy courts to consider the "totality of circumstances" in determinations concerning dismissals of Chapter 13 cases on "bad faith" grounds. *In re Goeb*, 675 F.2d 1386 (9th Cir.1982). Other considerations include whether there have been serial filings and whether all proceedings have unduly harassed the creditors. Such principle usually is found in Chapter 11 cases. *See In re Moore*, 188 B.R. 671 (Bankr.Idaho 1995). Dismissals which are based on "bad faith" grounds are intended to protect the court's inherent jurisdiction from abuses of the legal system. As the Ninth Circuit observed in *In re Arnold*, 806 F.2d 937, 939 (9th Cir.1986):

> The existence of good faith depends on an amalgam of factors and not upon a specific fact. *Matter of Littlecreek [Little Creek] Development Co.*, 779 F.2d [1068,] at 1072 [ (5th Cir.1986) ]. The bankruptcy court should examine the debtor's financial status, motives, and the local economic environment. *Id.* Said a Ninth Circuit bankruptcy panel:

> > If it is obvious that a debtor is attempting unreasonably to deter and harass creditors in their bona fide efforts to realize upon their securities, good faith does not exist. But if it is apparent that the purpose is not to delay or defeat creditors but rather to put an end to long delays, administration expenses ... to mortgage foreclosures, and to invoke the operation of the [bankruptcy law] in the spirit indicated by Congress in the legislation, namely to attempt to effect a speedy efficient reorganization,

> > on a feasible basis ... good faith cannot be denied.

*In re Thirtieth Place, Inc.*, 30 B.R. 503, 505 (9th Cir. BAP 1983) (quoting *In re Loeb Apartments, Inc.*, 89 F.2d 461, 463 (7th Cir.1937)).

> Good faith is lacking only when the debtor's actions are a clear abuse of the bankruptcy process.

 Finally, the court notes that this case is nothing more than a two-party dispute. Indeed, Chase is the *only* creditor listed in the present case. Such disputes are best resolved in the state court process, not the bankruptcy courts. *See In re Landmark Capital*, 27 B.R. 273 (Bankr.D.Ariz.1983). The court therefore concludes, as a matter of fact and law, that this case was filed in bad faith.

III. **RULING.**

Consistent with the foregoing, this court concludes that the debtors' fourth Chapter 13 case was filed in bad faith. Therefore,

IT IS ORDERED that the debtors' fourth case is dismissed;

 IT IS FURTHER ORDERED that because the debtors wilfully failed to follow numerous bankruptcy court orders in this and their prior cases, failed to follow the law with regard to filing appropriate and required documents, and failed to cooperate with the trustee in appearing and being examined at numerous § 341 hearings, that therefore, pursuant to 11 *U.S.C.* § 109(g), the debtors are prohibited from filing further bankruptcy pleadings for 180 days from the date of this Order;

IT IS FURTHER ORDERED that, should the debtors defy the filing prohibition set forth above, the Clerk of the Court is directed to assign the case to the undersigned Bankruptcy Judge;

IT IS FURTHER ORDERED that, should the debtors file again, in violation of this court Order, that the court will hold a prompt, final stay relief hearing upon the filing of a request therefore by Chase. With its filing of the stay relief request, Chase is also directed to lodge a form of order which

would vacate and annul any § 362 automatic stay. In such event, the court may elect to forego an actual hearing, and may enter such Order upon presentation.

IT IS FURTHER ORDERED that the debtors shall not waste or destroy the subject property pending conclusion of the creditor's rights.