17 P.3d 790

Jimmy L. KELLY and Ann M. Kelly, Plaintiffs–Appellants,

v.

NATIONSBANC MORTGAGE CORPORATION, Defendant–Appellee.

No. 1 CA–CV 99–0642.

Court of Appeals of Arizona, Division 1, Department B.

Dec. 26, 2000.

As Amended March 1, 2001.

Law Offices of David P. Brooks, PLC, by David P. Brooks, Mesa, Attorney for the Kellys.

Hammerman & Hultgren, P.C., by Robert R. Hall, Phoenix, and Moss Pite & Duncan, LLP, by Michelle Mierzwa, El Cajon, CA, Attorneys for NationsBanc Mortgage Corp.

## OPINION

TOCI, Presiding Judge.

¶ 1 After appellee NationsBanc Mortgage Corporation ("NationsBanc") noticed a trustee's sale of appellants' Jimmy L. Kelly and Ann M. Kelly ("the Kellys") property, the Kellys filed a bankruptcy petition, which caused four postponements of the trustee's sale. Once the bankruptcy was dismissed, the property was sold at a trustee's sale. The Kellys sued, alleging that the sale was invalid because NationsBanc failed to give them a detailed accounting of their payments and to give them actual notice of the rescheduled trustee's sale date.

¶ 2 The trial court granted summary judgment in favor of NationsBanc. We hold that the Kellys failed to produce any evidence to establish a genuine issue of material fact concerning the accounting and that NationsBanc was not required to provide an additional notice of the postponed sale. Accordingly, we affirm the trial court for the reasons discussed below.

## I. FACTS AND PROCEDURAL HISTORY

¶ 3 The Kellys bought a house in Mesa in 1986. They financed the purchase with a mortgage loan from the predecessor in interest of Nationsbanc; the loan was secured by a deed of trust on the property.

¶ 4 On January 14, 1998, NationsBanc recorded the notice of the trustee's sale of the

Kellys' house. The sale was set for April 23, 1998. The notice was mailed to the Kellys twice, was published in a newspaper, was posted in a public place, and was posted on the Kellys' house.

¶ 5 On April 20, 1998, the Kellys filed a petition for relief under Chapter 13 of the Federal Bankruptcy Code. As a result, the imposition of an "automatic stay" prevented the scheduled trustee's sale. The trustee's sale was postponed by oral declaration to June 4, 1998, then to July 7, 1998, then to August 4, 1998, and finally to September 29, 1998.

¶ 6 The Kellys' bankruptcy was dismissed on September 14, 1998. On September 29, 1998, the trustee's sale was held. NationsBanc purchased the subject property for the amount of the total debt owed at the time of the sale.

¶ 7 The Kellys sued NationsBanc, alleging that it had failed to comply with statutory requirements for the trustee's sale and had violated their constitutional rights by failing to provide actual notice of the trustee's sale held on September 29, 1998. They also requested an accounting of payments received by NationsBanc so that they could determine whether the amounts they had paid had been properly credited.

¶ 8 NationsBanc filed a motion to dismiss or, in the alternative, motion for summary judgment. It produced evidence to show that all steps required by statute to process a non-judicial foreclosure had been taken with regard to the Kellys' property and argued that neither Arizona law, federal bankruptcy law, nor due process concerns required a renewed notice of a post-bankruptcy trustee's sale. Included in the materials cited by NationsBanc was a list of mortgage payments made between October 1995 and September 1998, which were applied to payments due from January 1994 to November 1995. The Kellys responded that the payment schedule presented by NationsBanc was insufficient to prove the amount due on the mortgage loan, and they noted that the bankruptcy court in *In re Acosta*, 181 B.R. 477 (Bankr.D.Ariz.1995), held that notice of a trustee's sale was required when the sale had

been postponed because of the bankruptcy automatic stay.

¶ 9 The trial court denied NationsBanc's motion to dismiss but did not rule on the alternative motion for summary judgment and granted the Kellys time to respond to the summary judgment motion if they wished to do so. Because the Kellys' attorney withdrew from their representation, the court granted the Kellys additional time to respond to the motion for summary judgment, but they filed no further response.

¶ 10 The court granted NationsBanc's motion for summary judgment without comment. The Kellys timely appealed.

## II. DISCUSSION

### A. Request for Accounting

¶ 11 For their first issue, the Kellys argue that the trial court erred in granting summary judgment as to Count III of the complaint, which sought an accounting. They assert that NationsBanc said nothing about that count in its briefing before the trial court and did not establish that an accounting had been provided or that there were no genuine issues of fact relating to the accounting.

¶ 12 In its motion to dismiss/motion for summary judgment, NationsBanc did not directly address the Kellys' request for an accounting. It did point out, however, that under Arizona Revised Statutes Annotated ("A.R.S.") Section 33–813(C) (2000), it was required to provide the Kellys "a good faith estimate of the sums which appear necessary to reinstate the trust deed, separately specifying costs, fees, accrued interest, unpaid principal balance and any other amounts which are required to be paid as a condition to reinstatement of the trust deed." NationsBanc showed that it provided this required information twice, with an initial statement going to the Kellys and an updated statement going to their attorney. NationsBanc also introduced into the trial court record an accounting of payments made by the Kellys from 1995 to 1998.

¶ 13 The evidence shows that NationsBanc complied with A.R.S. Section 33–813(C) prior to the trustee's sale. There is no statu-

tory requirement that the trustor be supplied with a complete accounting, and the Kellys have not argued any authority that requires such an accounting. Once the Kellys filed suit, however, NationsBanc did present an accounting of the most recent thirty-six months of payments to substantiate the figures it used in its estimate of sums necessary to reinstate the trust deed.

¶ 14 The Kellys argue that a fact issue existed as to whether NationsBanc's reinstatement quotes were accurate. We disagree. When the party moving for summary judgment makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the opposing party to produce sufficient competent evidence to show that an issue exists. *GM Dev. Corp. v. Cmty. Am. Mortgage Corp.*, 165 Ariz. 1, 5, 795 P.2d 827, 831 (App.1990). NationsBanc provided an accounting that supported the figures it used for its reinstatement quotes, thus making a prima facie showing that no genuine issue of material fact existed as to the accuracy of the reinstatement amounts. The burden then shifted to the Kellys to produce evidence to dispute the numbers provided by NationsBanc.

¶ 15 The Kellys failed to provide any evidence to refute the accounting supplied by NationsBanc. They argue that they presented sworn testimony in their verified complaint that was sufficient to create an issue of fact on the accounting claim. However, a party opposing a motion for summary judgment may not rest on the pleadings; it must respond with specific facts showing a genuine issue for trial. *Doe v. Roe*, 191 Ariz. 313, 324, ¶ 33, 955 P.2d 951, 962 (1998). The Kellys did not produce any records to show that NationsBanc's figures were wrong. Absent such evidence, the Kellys could not establish that the reinstatement amount was wrong or even that having a full accounting from NationsBanc before the trustee's sale was conducted would have made any difference in the reinstatement amount. Therefore, no genuine issue concerning the request for an accounting was established.

¶ 16 After the Kellys, by their attorney, responded to the motion to dismiss/motion for summary judgment, the trial court gave them two additional opportunities to respond to the motion for summary judgment. They failed to do so. We recognize that during those two additional time periods, the Kellys were not represented by counsel. It is well-established, however, that a party who conducts a case without an attorney is entitled to no more consideration from the court than a party represented by counsel, and is held to the same standards expected of a lawyer. *See, e.g., Higgins v. Higgins*, 194 Ariz. 266, 270, 981 P.2d 134, 138 (App. 1999); *Copper State Bank v. Saggio*, 139 Ariz. 438, 441, 679 P.2d 84, 87 (App.1983). Therefore, because the Kellys failed to produce evidence to refute the accounting presented by NationsBanc, the trial court properly granted summary judgment on Count III in favor of NationsBanc.

**B. Post–Bankruptcy Notice of Trustee's Sale**

¶ 17 For their second issue, the Kellys argue that the trial court erred in granting summary judgment for NationsBanc when the verified complaint established that the Kellys had been paying their mortgage payments, NationsBanc had not provided a detailed accounting, and NationsBanc did not give the Kellys actual notice of the September 29, 1998, trustee's sale after the bankruptcy was dismissed. Because we have resolved the first two parts of this issue, we next address the third part: whether notice to the Kellys of the post-bankruptcy trustee's sale was required.

¶ 18 The requirements for noticing a trustee's sale are listed in A.R.S. section 33–808 (2000). Section 33–810(B)(2000) provides for the postponement of a previously noticed trustee's sale as follows:

The person conducting the sale may, for any cause deemed in the interest of the beneficiary or trustor, or both, postpone or continue the sale from time to time, or change the place of the sale to any other location authorized pursuant to this chapter by giving notice of the new date, time and place by public declaration at the time and place last appointed for the sale. Any new sale date shall be a fixed date within

ninety calendar days of the date of the declaration. No other notice of the postponed, continued or relocated sale is required except as provided in subsection C of this section.

Subsection C provides for written notice to bidders in the event a sale is continued because of an unknown or undisclosed bankruptcy.

¶ 19 As the parties point out, judges in the United States Bankruptcy Court for the District of Arizona have considered whether, in light of this statute, post-bankruptcy notice to debtors is required and have come to differing conclusions. In *In re Acosta*, a trustee's sale noticed before the debtors filed their bankruptcy petition was orally continued various times during the pendency of the bankruptcy proceedings. The bankruptcy petition was dismissed, and the debtors filed a motion to reinstate the petition. While the motion was pending, a trustee's sale of the debtors' residence was held; the debtors received no actual notice of the continued trustee's sale.

¶ 20 The *Acosta* court recognized that A.R.S. section 33–810(B) "provides that once an initial sale has been set, a postponed sale need not be directly noticed to interested parties." *Id.* at 478. The court noted, however, that the statute does not take into consideration the effect of a bankruptcy filing and a continued sale date that occurs after a bankruptcy. *Id.* Citing the possibility that a debtor would not realize that a foreclosure will occur until it is too late to respond, the court found that prior oral notice alone is insufficient to allow the loss of the debtor's rights in property. *Id.* The *Acosta* court thus concluded that because of the intervening bankruptcy, the mortgage company had a duty to provide the debtors with actual notice of the rescheduled trustee's sale date after dismissal of the debtors' bankruptcy petition. *Id.* at 479. The rationale behind the ruling was that "it is an essential right under the United States Constitution that before property can be taken and sold by a creditor, due process requirements must be met" and that the notice requirements under A.R.S. section 33–810(B) "are not reasonably calculated ... to apprise interested parties of the pendency

of a Trustee's Sale within the context of a bankruptcy case." *Id.*

¶ 21 Although the same bankruptcy judge followed the *Acosta* ruling in *In re Duncan*, 211 B.R. 42 (Bankr.D.Ariz.1997), when the issue was presented to another judge of the bankruptcy court in *In re Stober*, 193 B.R. 5 (Bankr.D.Ariz.1996), the opposite result was reached. In disagreeing with *Acosta*, the *Stober* court stated:

In essence, *Acosta* judicially amends the Arizona statute to provide *additional* noticing requirements applicable only to debtors who had previously filed a federal bankruptcy case. The *Acosta* opinion thus extends additional post-dismissal bankruptcy protections to former debtors, although the intent of 11 U.S.C. § 349 provides that the effect of a dismissal requires only a return to the *status quo*.

*Id.* at 10. Accordingly, the *Stober* court elected not to follow *Acosta*. It declined to impose noticing requirements on a creditor in addition to those required by Arizona law, pointing out that the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure contain no additional notice requirements. *Id.* The court noted that if the debtors could prove that the creditor failed to follow the noticing, publishing, posting, and sale requirements of A.R.S. sections 33–801 through –821, the debtors' remedy was to pursue an action for damages or injunction in the state courts. *Id* .

¶ 22 More recently, the United States District Court for the District of Arizona considered this issue in *In re Nagel*, 245 B.R. 657 (D.Ariz.1999), an appeal from an order entered by the bankruptcy court. The *Nagel* court was persuaded by the reasoning in *Stober*, stating:

[T]he legal intent and effect of a dismissal of a bankruptcy case is to return the parties to the *status quo ante*. Once so returned, the parties are rightly subject to Arizona deed of trust law which was suspended only when a valid stay was in place. *Acosta* not only "judicially amends the Arizona statute to provide *additional* noticing requirements applicable only to debtors who had previously filed a federal bankruptcy case," but it also judicially

amends the Bankruptcy Code. That is to say, *Acosta* disregards the fundamental principle that dismissal returns the parties to the *status quo ante* and declares an exception to the code itself. The promulgation of federal bankruptcy law is properly within Congress' ken, not the court's.

*Id.* at 664 (citing *Stober*, 193 B.R. at 10).

¶ 23 The *Nagel* court believed that the due process concerns of *Acosta* were unwarranted. *Id.* It noted that once the initial notice of the trustee's sale is given in compliance with due process, the debtor is in a position to keep himself informed of the status of the matter. *Id.* The court rejected the idea that due process requires a "sort of judicial shepherding of the litigants" to ensure that they keep informed about postponements of trustees' sales of their own properties. ·*Id.*

¶ 24 The *Nagel* court was also convinced that the *Acosta* court's reliance on *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), for its due process clause analysis was misplaced. 245 B.R. at 664. It explained that *Mullane* concerned a trust that was a creature of a state regulatory scheme and therefore was an entity that was essentially an extension of the "state's power." *Id.* at 664–65. On the other hand, said the *Nagel* court, the Arizona statute that authorizes trustees' sales does not "involve the requisite nexus between the state and the trustee so as to constitute state action. Rather, deeds of trust are essentially private contractual relationships which tie a given debt to a given parcel of property, and the remedy under them is private in nature." *Id.* (citing *Kenly v. Miracle Properties*, 412 F.Supp. 1072, 1075–76 (D.Ariz.1976)); *see also Charmicor v. Deaner*, 572 F.2d 694, 696 (9th Cir.1978) (Nevada nonjudicial foreclosure statute did not involve significant state action because it did not require that action be taken but merely permitted, restricted, and limited certain acts). Thus, the *Nagel* court believed

that the due process requirements do not apply to a private deed of trust sale because such a sale does not constitute state action. 245 B.R. at 664.

■ ¶ 25 We agree with the reasoning set forth by the courts in *Stober* and *Nagel* and adopt their conclusions here. The initial notice of the trustee's sale of the Kellys' property complied with A.R.S. section 33–808, and the Kellys do not argue that NationsBanc failed to comply with section 33–310 when it postponed the sale. Thus, it became the Kellys' burden to stay apprised of the new sale dates. Neither our statutes nor the Bankruptcy Code require any further notice when a bankruptcy filing, with its automatic stay, is the reason a trustee's sale is postponed. Once the bankruptcy is dismissed, bankruptcy law returns the parties to the *status quo ante*, at which time Arizona deed of trust law, not bankruptcy law, applies. Therefore, NationsBanc was not required to provide additional notice to the Kellys of the new trustee's sale date before the sale was held. Accordingly, the trial court correctly granted summary judgment on the Kellys' claim that the sale was invalid.

**C. Costs and Attorneys' Fees**

■ ¶ 26 NationsBanc requests an award of its attorneys' fees and costs incurred in this appeal. Because NationsBanc is the prevailing party, we award it the costs it has incurred on appeal. We deny the request for attorneys' fees because NationsBanc has failed to cite any authority under which it might be entitled to such an award. *See Matter of Wilcox Revocable Trust*, 192 Ariz. 337, 341, ¶ 21, 965 P.2d 71, 75 (App.1998) (court will not award attorney's fees where no basis for award is cited).

**III. CONCLUSION**

¶ 27 The Kellys failed to refute the accounting presented by NationsBanc; therefore, the trial court properly granted summary judgment on Count III of the complaint in favor of NationsBanc. NationsBanc provided the required notice of

the trustee's sale; therefore, the trial court properly granted summary judgment in favor of NationsBanc on the claim that the sale was invalid. Accordingly, we affirm.

CONCURRING: SHELDON H. WEISBERG, Judge, and JAMES B. SULT, Judge.