**In re Joseph HILLS, Debtor.**

**Joseph Hills, Plaintiff,**

**v.**

**OCWEN Federal Bank, FSB: Fidelity National Title Insurance Company; AHG Equities Limited Partnership, an Arizona limited partnership; 402 Property Wholesalers, L.L.C.,an Arizona limited liability company; Johan and Jane Does I–V; Black and White Entities I–V, Defendants.**

**Bankruptcy No. 01–03850–PHX–SSC.**
**Adversary No. 01–1235.**

United States Bankruptcy Court,
D. Arizona.

Dec. 2, 2002.

Josephine E. Piranio, Moss, Pite & Duncan, LLP, El Cajon, CA, for defendants.

Robert C. Mothershead, Robert Mothershead, P.C., Phoenix, AZ, for plaintiff.

## MEMORANDUM DECISION

SARAH SHARER CURLEY, Chief Judge.

### I. INTRODUCTION

On March 11, July 29 and July 30, 2002, this Court conducted an evidentiary hearing on AHG Equities Partnership Limited's Motion for Relief from Stay and on the underlying issues in the adversary proceeding concerning the validity of a trustee's sale of certain real property, which sale ultimately occurred on October 15, 2001. Joseph Hills was directed to file a post-trial brief, which he did. The Defendants chose, and relied solely on, oral arguments presented at the close of trial.

In this Memorandum Decision, the Court has set forth its findings of fact and conclusions of law pursuant to Rule 7052 of the *Rules of Bankruptcy Procedure.* The issues addressed herein constitute a core proceeding over which this Court has jurisdiction. 28 U.S.C. §§ 1334(b) and 157(b) (West 2002).

## II. FACTUAL BACKGROUND

In 1990, the Plaintiff obtained title to real property located at 5119 East Shaw Butte Drive, Scottsdale, Arizona via a Joint Tenancy Deed recorded on September 28, 1990. The Plaintiff failed to remit timely payments to the Secured Creditor, OCWEN Federal Bank, as required by the Note and Deed of Trust. Accordingly, a trustee's sale was scheduled by OCWEN for March 30, 2001. The Plaintiff filed a bankruptcy petition on March 30, 2001, the day of the scheduled foreclosure sale.

OCWEN postponed the sale from month-to-month during the pending bankruptcy. On September 14, 2001, an order was entered dismissing the Plaintiff's bankruptcy due to the Debtor's failure to make Plan payments. On October 4, 2001 OCWEN, through their foreclosure outsourcing group, Moss, Codilis, Stawiarski, Morris, Schneider & Prior, LLP ("Moss Codilis")[1] advised Cameron & Dreyfus, a California law firm, to postpone the trustee's sale until October 10, 2001 to allow Moss Codilis to provide them with bidding instructions.[2] On October 10, 2001, the Plaintiff advised OCWEN that he had filed Chapter 7 bankruptcy. Consequently, Moss Codilis instructed Cameron & Dreyfus to postpone the trustee's sale until October 12, 2001 in order for OCWEN to confirm whether a new bankruptcy petition had been filed.

On a related issue as to the October 10 trustee's sale, Mr. Hills alleged that the trustee's sale was not appropriately continued under Arizona law, by stating that a "phantom" continuance occurred; that is, no one was there on the courthouse steps on October 10, at the appropriate time, to announce orally a continuance. However the testimony of disinterested third parties, who had intended to bid on certain properties and were there on October 10 at the appropriate time, reflects that an appropriate continuance occurred as to Mr. Hills' property to October 12, 2001.

After discovering that no new petition had been filed by Mr. Hills on October 10, 2001, and to allow for the receipt of updated bidding instructions by 9:00 a.m. the day prior to the sale, Moss Codilis and Cameron & Dreyfus agreed to have the trustee's sale postponed from October 12, 2001 to October 15, 2001, a Monday.

On October 12, 2001, Moss Codilis, in Florida, commenced the process to get the bidding instructions to Cameron & Dreyfus in California in a timely manner. Both parties knew that the bid amount, or the then due and owing principal, interest and other allowable fees and costs of OCWEN, the secured creditor, must be available to the public by 9:00 a.m. Phoenix time on October 12, 2001, for a trustee's sale to occur on October 15, 2001.

A number of e-mails were produced from the internal records of Moss Codilis and Cameron & Dreyfus reflecting that the parties commenced communications back and forth around 7:30 a.m. Pacific Daylight Savings Time ("DST"), which would be 10:30 a.m. Eastern DST.[3] By 9:00 a.m. Pacific DST, Cameron & Dreyfus had the appropriate information and placed the bid amount on its system in time for the public to obtain.[4] Since Phoenix, Arizona is on Mountain Standard Time all year

---

1. The Moss Codilis' office located in Florida was involved in this matter.

2. Cameron & Dreyfus actually employed Trustee's Assistance Corporation to conduct the trustee's sale at the appropriate Arizona location.

3. See Exhibits H, I and J.

4. *Id.*

around, when Cameron & Dreyfus placed the bid on its automated telephone system in California before 9:00 a.m. Pacific DST, that was making the information available to the public before 9:00 a.m. Phoenix time as required.[5]

Mr. Hills does not challenge the e-mails and the times reflected thereon. He does challenge the facsimile which was sent from Moss Codilis to Cameron & Dreyfus. The bidding instructions show a bid amount was placed on a sheet which had stamped at the top "Oct. 12, 2001 12:04 EST." If this were the only evidence as to when the bid amount was transferred to Cameron & Dreyfus in California, the Court would be concerned. However, the e-mails reflect that the bid amount was actually being transferred much earlier in the day. Also, as outlined previously, Florida was on Eastern DST at the time, so the "EST" on the facsimile makes no sense. Other facsimiles introduced into evidence reflect that the time entries on the Moss Codilis facsimile machine were as much as 40 minutes fast during the relevant time period. Moreover, an individual who was present at the trustee's sale on October 15, 2001, and was the unsuccessful bidder for Mr. Hills' property did not have an independent recollection of the bid being posted late on October 12, 2001.[6]

Mr. Hills did call as a witness a Mr. Kamber who tracks trustee's sales in Arizona. In some cases, Mr. Kamber bids at the trustee's sales to purchase the property for himself, as an investment, or to assist individuals who are about to lose their properties at trustee's sales.[7] Mr. Kamber testified that he was unable to keep track of the many continuances of the trustee's sale as to Mr. Hills' property. He also conceded that he was tracking many properties at the time, which is typical for people who bid at trustee's sales, and simply may have lost track of Mr. Hills' property. He testified that he did not know whether the bid amount for Mr. Hills' property was posted past 9:00 a.m. MST, or Phoenix time, on October 12, 2001.

Mr. Hills, who was generally not credible when he testified, only stated that he called the Cameron & Dreyfus telephone line "numerous times" on October 12, 2001, and could never get through to obtain the bid amount to provide to Mr. Kamber. Other individuals who tracked trustee's sales did not agree with him. Although the bidders also called the toll-free automated number to get the bid information, and noted that the Cameron & Dreyfus line was occasionally busy on other days, none of the bidders noted a problem getting the bid information as to Mr. Hills' property on October 12, 2001.[8] Therefore,

---

5. In 2001, Daylight Savings Time did not change back to Standard Time until October 28. Therefore, the Court's discussion of the times in California, Arizona and Florida reflects that on October 12, 2001, Pacific DST was the equivalent of Phoenix time, which was on Mountain Standard Time.

6. This individual is apparently known in Arizona for making sure that the bids are posted on time and that the other statutory requirements under Arizona law are followed. He was actually present and bid on Mr. Hills' property on October 15, 2001. He had no recollection of the bid amount being posted late for the property on October 12, 2001.

7. Mr. Kamber apparently assisted individuals by acquiring the property in his name, then transferring the property to the foreclosed individual, and receiving a secured lien on the property in return.

8. What is left open for another day is whether a company located in another state, but assisting in Arizona trustee's sales, makes it so inconvenient for Arizona bidders to get information on a property that the statutory requirements under Arizona law to make the bid available to the public by 9:00 a.m. the business day before a trustee's sale are deemed not to be followed.

the Court disregards the testimony of Mr. Hills as to the availability of the bid information to the public on October 12, 2001.

On October 15, 2001, the trustee's sale of Mr. Hills' property did occur. 402 Property Wholesalers, LLC was the successful bidder at the sale.[9]

On October 25, 2001, 402 Property Wholesalers recorded their Trustee's Deed upon Sale and simultaneously quit-claimed the property to AHG Equities Limited Partnership ("AHG"). The Quit Claim Deed was also recorded on October 25, 2001. In the interim, after the trustee's sale, on October 19, 2001 the Plaintiff filed another Chapter 13 bankruptcy petition.[10] Subsequently on October 29, 2001, AHG filed a Motion for Relief from Stay. On November 1, 2001, the Court dismissed the second case and reinstated the original Chapter 13.[11] Shortly thereafter, on November 15, 2001, the Plaintiff filed this adversary action alleging that AHG was not a *bona fide* purchaser who acquired the property without notice or actual knowledge as to any defects concerning the sale of Mr. Hills' property. The Court proceeded to consolidate the adversary proceeding and Motion for Relief from Stay, and the matters were tried.

Finally, and of note, Mr. Hills did call Mr. Lee Crosby of Crosby & GATT at his expert witness on Arizona trustee's sales. Mr. Crosby focused on the relatively recent requirements under Arizona law that the bid information should be available to the public at 9:00 a.m., one business day prior to the trustee's sale. He noted two reasons for the requirement: (1) from a market standpoint, to allow the public to compare the amount of secured debt encumbering a parcel versus the value of the real property to determine whether the property may serve as an investment; and (2) from the standpoint of the borrower, to reinstate the loan prior to the sale, or to have another purchase the property at the trustee's sale for the benefit of the borrower. The expert did not opine as to whether an out-of-state agent, such as Cameron & Dreyfus, could fulfill the requirements of Arizona law.

## III. DISCUSSION

The Plaintiff challenges the October 15, 2001 trustee's sale on the basis that (1) the information as to the initial bid on the property was not available 24 hours ahead of time, so that one might bid on the property, as required by Arizona law; and (2) even if the information was available, he was unable to contact Cameron & Dreyfus on October 12, 2001 to obtain the appropriate bid information; hence, the information was not available to the public. Finally, the Plaintiff alleges that the continuance of the trustee's sale from October 10, 2001 to October 12, 2001 did not occur.

***Plaintiff Cannot Set Aside the Trustee's Sale Against a Bona Fide Purchaser for Value Without Notice of Alleged Defects.***

Initially, AHG and 402 Property Wholesales argue that they are entitled to the protections afforded a good faith purchaser in accordance with A.R.S. § 33–811(B).[12] Pursuant to A.R.S. § 33–811(B)

---

9. 401 Property Wholesalers paid $136,001.00 for Mr. Hills' property.

10. See Case 01–14018.

11. See Case 01–14018, Docket No. 11.

12. A.R.S. § 33–811(B) (West 2002) states:

The price bid shall be paid at the office of the trustee or the trustee's agent, or any other reasonable place designated by the trustee. The payment of the bid price may be made at a later time if agreed upon in writing by the trustee. The trustee shall execute and deliver the trustee's deed to the purchaser within seven business days after

a Trustee's Deed creates a "presumption of compliance" and "conclusive evidence" that the sale was conducted regularly in accordance with the required statutory notice provisions. *Triano v. First American Title Insurance Company of Arizona*, 131 Ariz. 581, 643 P.2d 26 (App.1982); *Main I Ltd. Partnership v. Venture Capital Const. Dev. Corp.*, 154 Ariz. 256, 741 P.2d 1234 (App.1987); *Security Savings and Loan Ass'n v. Milton*, 171 Ariz. 75, 828 P.2d 1216 (App.1991); *Bam Investments, Inc. v. Roberts*, 172 Ariz. 602, 838 P.2d 1363 (App. 1992) Thus, a purchaser who purchases for value without actual notice of any alleged defect in the notice of the sale is held to hold good title by means of the Trustee's Deed issued in its favor.[13] *Main I Ltd. Partnership v. Venture Capital Const. & Dev. Corp.*, 154 Ariz. 256, 741 P.2d 1234 (App.1987). Accordingly, the sale as to a *bona fide*, third-party purchaser is valid. As noted by AHG, the Plaintiff's sole remedy, if he is able to prove that there were any irregularities with the sale, is to proceed against the secured creditor or the trustee under the secured creditor's deed of trust who allowed the agent to conduct the sale.

■ The Plaintiff alleges that the initial purchaser, 402 Property Wholesalers, received inside information about the numerous continuances of the trustee's sale that were not announced to the public. A foreclosure sale is void if there are grounds for equitable relief based on serious sale defects, including deliberate notice failure, fraud, misrepresentation, or concealment. *Main I Ltd. Partnership v. Venture Capital Const. & Dev. Corp.*, 154 Ariz. 256, 260, 741 P.2d 1234 (App.1987). This Court concludes that there was no credible evidence that 402 Property Wholesalers received any improper information which would vitiate its ability to rely on the Trustee's Deed. The Court concludes that both 402 Property Wholesalers and AHG were good faith, third-party purchasers, for value, without notice of any alleged defects. Accordingly, the Plaintiff cannot set aside the trustee's sale on this basis. The Court could conclude its analysis here, at least as to the purchaser at the October 15, 2001 trustee's sale. However, other issues have been raised by the Debtor which may impact OCWEN, or its agents, which the Court will address.

### The Bid Information Was Posted and Provided to the Public in a Timely Manner in Accordance With Arizona Law.

■ Pursuant to A.R.S. § 33–809(F) [14], the trustee must provide to any person

receipt of payment by the trustee or the trustee's agent made in a form that is satisfactory to the trustee. The trustee's deed shall raise the presumption of compliance with the requirements of the deed of trust and this chapter relating to the exercise of the power of sale and the sale of the trust property, including recording, mailing, publishing and posting of notice of sale and the conduct of the sale. A trustee's deed shall constitute conclusive evidence of the meeting of those requirements in favor of purchasers or encumbrancers for value and without actual notice. Knowledge of the trustee shall not be imputed to the beneficiary.

13. Additionally, A.R.S. § 33–808(E) (West 2002) states:

   Any error or omission in the information required by subsection C or D of this section, other than an error in the legal description of the trust property or an error in the date, time or place of sale, shall not invalidate a trustee's sale.

14. A.R.S. § 33–809(F) (West 2002) states:

   Beginning at 9:00 A.M. and continuing until 5:00 p.m. on the last business day preceding the day of sale and beginning at 9:00 a.m. and continuing until the time of sale on the day of the sale, the trustee shall provide to any person who requests it the

who requests it, the actual bid or credit bid the purchaser is entitled to make at the trustee's sale beginning at 9:00 a.m. on the day before the sale. If the trustee is unable to provide this information, the sale must be postponed. The Plaintiff argues that OCWEN did not provide the information to Cameron & Dreyfus in a timely manner so that it could be posted in compliance with Arizona law. Second, even if the information were posted in a timely manner, the Plaintiff was unable to obtain the information from Cameron & Dreyfus. Thus, the Plaintiff argues that if he could not obtain the information, the information was not available in a timely manner to the public.

As explained previously and although a complex procedure, OCWEN decided to utilize a number of agents to assist it in its Arizona trustee's sales. First, OCWEN, or its agent, had to determine the amount of its secured debt, which could vary on a daily basis, if for no other reason than the accrual of interest. Moss Codilis provided such information in this case. This amount served as the credit bid for the property. If no one bid above this amount, OCWEN would be the successful purchaser of the property. Once Moss Codilis determined the bid amount as of the next business day, which would be, presumably, the trustee's sale date, it would e-mail or fax the information to Cameron & Dreyfus, the California law firm. The firm would then place the bid information on its automated lines. However, any bidder also had the independent ability to call Cameron & Dreyfus directly for more information. On the date and at the time of the trustee's sale, one of the agents of Trustee's Acceptance Corporation would be at the site of the Arizona

trustee's sale and contact, by cell phone, the California office of Trustee's Acceptance to determine whether Cameron & Dreyfus had appropriately posted a bid for the property. If the information was not available in a timely manner to any of the agents of Trustee's Acceptance, the trustee's sale would be continued.

Here, the evidence reflects that several days prior to the October 15, 2001 sale, Moss Codilis, in Florida, worked with Cameron & Dreyfus to finalize the bid for Mr. Hills' property. The Plaintiff focused on the different times posted on the facsimiles and e-mail correspondence between the parties in an effort to show that the bid for the property was actually posted later than 9:00 a.m. Phoenix time on October 12, 2001, in violation of Arizona law. The testimony by witnesses for the Defendants offered reasonable explanations for any time differences reflected on the various facsimile transactions. Furthermore, disinterested third parties who did bid on the property on October 15, 2001 testified that they did not have trouble obtaining the bid information from the automated line of Cameron & Dreyfus and that the bid was available in a timely manner. Moreover, the Court must struggle with a Plaintiff who was not credible on many critical points.

Here, evidence reflects that the Plaintiff was able to contact OCWEN prior to the trustee's sale, not in an attempt to obtain the bid amount for his property, but to try and restructure his debt. OCWEN was unwilling to negotiate any type of workout arrangement with Mr. Hills. The Plaintiff was also not credible when he stated he was unable to obtain the bid amount from Cameron & Dreyfus. Quite simply, many other individuals were able to do so. Also

actual bid or credit bid the beneficiary is entitled to make at the sale. If the trustee is unable to provide the credit bid during

the prescribed time period, the trustee shall postpone the sale until the trustee is able to comply with this subsection.

of concern to the Court is that the Plaintiff did not immediately advise OCWEN, the third party purchasers, or the trustee regarding the alleged problems with the trustee's sale. Rather, Mr. Hills waited several months before advising anyone of the alleged defects. The Plaintiff provides no reasonable explanation for the delay.

As noted previously in the factual discussion, Mr. Kamber stated that he may very well have lost track of the trustee's sale scheduled for October 15, 2001. Mr. Crosby, the Plaintiff's expert witness, did not opine whether the procedures utilized by Moss Codilis and Cameron & Dreyfus violated Arizona law, and the Court concludes on the facts presented in this case, including the testimony of the bidders and other parties present at the October 15, 2001, trustee's sale, that the bid information was available to the public by 9:00 a.m. MST on October 12, 2001 for the October 15, 2001 Trustee's Sale.

Given the evidence and the Plaintiff's lack of credibility, the Court concludes that the bid information was properly posted as required pursuant to Arizona law, and that the October 15, 2001 trustee's sale may not be set aside on that basis.

### The October 10 Trustee's Sale was Properly Continued to October 12

■ The Plaintiff also alleges that the continuance of the trustee's sale from October 10, 2001 to October 12, 2001 did not occur. As such, any subsequent sale, including the October 15 sale, is void. Mr. Kamber is in the business of assisting borrowers to renegotiate their secured debt or to purchase the borrower's property at a trustee's sale and then enter into a new transaction which allows the borrower to retain the residence and repay Mr. Kamber over a period of time in a restructured obligation. Mr. Kamber testified that he tracked the trustee's sale of Mr. Hills' property, with the understanding that Mr. Kamber would bid at the sale, and then restructure the transaction with Mr. Hills at a later date. Mr. Kamber testified that he lost track of the continuances of the trustee's sales as to Mr. Hills' property. However, he conceded that he was tracking a number of properties at the time and that it was conceivable that he simply lost track of the property through his error.

■ The Defendants called numerous individuals who testified that at the designated time of the trustee's sale on October 10, 2001, OCWEN's agent was there as well as third parties who wished to bid on Mr. Hills' property and other properties up for sale. According to the testimony, the sale was orally continued. Trustee's sales may be continued by public proclamation at the time and location of the previously scheduled sale. A.R.S. § 33–810 [15] (B); *In re Anderson*, 195 B.R. 87 (9th Cir. BAP 1996); *In re Stober*, 193 B.R. 5 (Bankr.D.Ariz.1996); *Kelly v. NationsBanc Mortg. Corp.*, 199 Ariz. 284, 17 P.3d 790 (App.2000). Here, OCWEN and its agents did nothing other than what was required by Arizona law. Given the independent evidence that others were able to track the property, the Court concludes

---

**15.** A.R.S. § 33–810(B) (West 2002) states:

The person conducting the sale may, for any cause deemed in the interest of the beneficiary or trustor, or both, postpone or continue the sale from time to time or change the place of the sale to any other location authorized pursuant to this chapter by giving notice of the new date, time and place by public declaration at the time and place last appointed for the sale. Any new sale date shall be a fixed date within ninety calendar days of the date of the declaration. No other notice of the postponed, continued or relocated sale is required except as provided in subsection C of this section.

that the trustee's sale of Mr. Hills' property was properly continued.

## IV. CONCLUSION

Having concluded that the trustee's sale was properly continued, the bid information properly posted in accordance with Arizona law and other requirements of Arizona law were met, the trustee's sale conducted on October 15, 2001 may not be set aside. Accordingly, AHG is the lawful owner of the subject property. There is no basis to proceed against OCWEN or its agents concerning the trustee's sale of Mr. Hills' property. AHG Equities should also have its separate Motion for Relief from Stay granted.

The Court will execute separate orders/judgments, as necessary, incorporating this Memorandum Decision.